# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

Jerud Butler

     Plaintiff/Appellant

v.

Board of County Commissioners for
San Miguel County; Mike Horner, in
his individual capacity; and Kristl
Howard, in her individual capacity

     Defendants/Appellees

Case No. 18-1012

_____

On Appeal from the United States District Court for the District of Colorado
The Honorable Judge Wiley Y. Daniel
Case Number 17-cv-00577-WYD-GPG
_____

## APPELLANT'S OPENING BRIEF
_____

Nicholas W. Mayle, Esq.
Damon Davis, Esq.
Benjamin P. Meade, Esq.
Killian Davis Richter & Mayle, PC
202 North Seventh Street
Grand Junction, CO 81501
Telephone: (970) 241-0707
FAX: (970) 242-8375
E-mail: ben@killianlaw.com
Attorneys for Jerud Butler

Oral Argument is Requested

March 13, 2018

# TABLE OF CONTENTS

Table of Authorities .................................................................................... iii

Prior or Related Appeals ............................................................................. v

Jurisdictional Statement ............................................................................. 1

Statement of the Issues ............................................................................... 2

Statement of the Case ................................................................................. 2

I.     Statement of the Facts ....................................................................... 2

II.    Procedural History ............................................................................ 3

III.   The Ruling Presented for Review ...................................................... 5

Summary of the Argument ........................................................................... 5

Argument ..................................................................................................... 7

I.     Standard of Review and Applicable Legal Test .................................. 7

II.    Butler's Truthful Court Testimony at a Child Custody Hearing
       was Speech on a Matter of Public Concern ........................................ 9

       A.     The Tenth Circuit has Clearly Established that Truthful
              Court Testimony is Speech on a Matter of Public
              Concern .................................................................................... 10

       B.     In the Alternative, the Law is Clearly Established that
              Truthful Court Testimony about Child Custody is Speech
              on a Matter of Public Concern ................................................. 18

       C.     This Court Should Not Be Persuaded Otherwise by either
              Defendants' Argument or the District Court's Reasoning .......... 22

III.    Defendants Have Not Shown That Their Interest in Promoting
        Workplace Efficiency Outweighed Butler's Free Speech
        Interest..................................................................................25

        A.      Although the District Court Did Not Reach This Issue,
                This Court Should Still Resolve It.......................................25

        B.      This Court Should Resolve This Issue in Butler's Favor...............26

Conclusion......................................................................................29

Statement of Counsel as to Oral Argument...............................................30

Certificate of Compliance...................................................................31

Certificate of Digital Submission..........................................................32

Certificate of Service.......................................................................33

Attachment: Order Dated December 7, 2017, Dismissing the
Complaint

# TABLE OF AUTHORITIES

<u>Table of Cases:</u>

*Belcher v. City of McAlester, Oklahoma*, 324 F.3d 1203 (10th Cir. 2003) .................................................................. 27

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................... 7

*Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853 (10th Cir. 2016) .................................................................. 26

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192 (10th Cir. 2007) .............................................................. 27, 28

*Deutsch v. Jordan*, 618 F.3d 1093 (10th Cir. 2010) ......... 10, 17, 24, 25

*E.P. v. Dist. Court of Garfield Cty.*, 696 P.2d 254 (Colo. 1985) .. 20

*The Estate of Lockett v. Fallin*, 841 F.3d 1098 (10th Cir. 2016) .. 7, 8

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ...................... 8, 25–27

*Gelfand v. Cherry Creek Sch. Dist.,* 2009 WL 8757859 (D. Colo. No. 07-CV-01923-CMA-CBS, June 10, 2009) ................. 19

*Gilchrist v. Citty*, 71 F. App'x 1 (10th Cir. 2003) .......... 10, 16, 18

*Gomes v. Wood,* 451 F.3d 1122 (10th Cir. 2006) .................... 20

*Haynes v. Williams*, 88 F.3d 898 (10th Cir. 1996) ................ 18

*Helget v. City of Hays, Kansas*, 844 F.3d 1216 (10th Cir. 2017) .. 8, 9, 17

*Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207 (10th Cir. 2000) .................................................................... 1

*Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565 (5th Cir. 1989) ................................................................ 13, 14

*Lane v. Franks*, 134 S. Ct. 2369 (U.S. 2014) .................................... 8–10, 16, 17,

*Langley v. Adams Cty., Colo.*, 987 F.2d 1473 (10th Cir. 1993) ... 5, 10–13, 15–18, 22, 24

*Lytle v. City of Haysville, Kan.*, 138 F.3d 857 (10th Cir. 1998) ... 15, 16,

*Melton v. City of Oklahoma City*, 879 F.2d 706 (10th Cir. 1989) (*Melton I*) .......................................................................... 10, 12, 16

*Melton v. City of Oklahoma City*, 928 F.2d 920 (10th Cir. 1991) (*Melton II*) ................................................................................... 10

*Morris v. City of Colorado Springs*, 666 F.3d 654 (10th Cir. 2012) ........................................................................................ 22, 23, 25

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) ....................... 8, 25–27

*Pro v. Donatucci*, 81 F.3d 1283 (3d Cir. 1996) ........................ 13, 14

*Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152 (10th Cir. 2017) ................................................................................ 26

*United States v. Edward J.*, 224 F.3d 1216 (10th Cir. 2000) ........ 17

*Wilson v. Wilson*, 474 P.2d 789 (Colo. 1970) ............................. 20

*Workman v. Jordan*, 32 F.3d 475 (10th Cir. 1994) .................... 11, 12

*Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000) .............. 5, 10, 13–18, 24

*Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492 (7th Cir. 1994) ......................................................... 6, 13, 18, 20–22

Table of Statutes:

§ 14-10-104.5, C.R.S. (2018) ................................................... 19

iv

§ 14-10-123.7, C.R.S. (2018) .............................................. 6, 19, 20

§ 14-10-124, C.R.S. (2018) ................................................ 6, 19

§ 19-3-100.5, C.R.S. (2018) ............................................... 19

§ 24-34-402.5, C.R.S. (2018) ............................................. 1

28 U.S.C. § 1291 .............................................................. 1

28 U.S.C. § 1331 .............................................................. 1

28 U.S.C. § 1367 .............................................................. 1

42 U.S.C. § 1983 ............................................................. 1, 3–5, 29


Table of Other Authorities:

F.R.A.P. 4 ...................................................................... 1

F.R.C.P. 12 .................................................................... 4

U.S. Const. amend. I ....................................................... 1–6, 8–17, 21, 22, 24, 29

U.S. Const. amend XIV .................................................... 1, 4, 11

## PRIOR OR RELATED APPEALS

None

# JURISDICTIONAL STATEMENT

Jerud Butler brought a First Amendment and Fourteenth Amendment claim under 42 U.S.C. § 1983. The United States District Court for the District of Colorado had jurisdiction pursuant to 28 U.S.C. § 1331. Butler also brought a claim under Colorado state law, section 24-34-402.5, C.R.S., the Lawful Activities Statute. The district court had jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

The district court entered a final decision in this matter, dismissing the federal claim with prejudice and declining to exercise jurisdiction over the state-law claim. Butler has appealed this final decision, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291. *See Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1209 n.1 (10th Cir. 2000) ("Federal appeals courts have consistently held . . . that they have jurisdiction to review a district court order dismissing federal claims on the merits where the district court subsequently exercised its discretion under § 1367 to remand supplemental state law claims to state court.").

The district court entered its final decision on December 7, 2017. Butler had 30 days to file his notice of appeal. *See* F.R.A.P. 4(a)(1)(A). Butler filed his notice of appeal in the district court on January 5, 2018. Butler's appeal was timely.

## STATEMENT OF THE ISSUES

1)      When Butler, a public employee, testified truthfully at a child custody hearing, was his testimony speech on a matter of public concern under the First Amendment?

2)      Given that Butler did not even work in the same district as the co-worker about whom he testified, did Defendants demonstrate that their interest in workplace efficiency outweighed Butler's free-speech interest in providing truthful testimony at a child custody hearing?


## STATEMENT OF THE CASE

### I.      STATEMENT OF THE FACTS

As alleged in the complaint, Jerud Butler worked as a District Supervisor for the San Miguel County Road and Bridge Department.  Aplt. App. at 9 (¶ 14).

On September 7, 2016, he testified in a child custody hearing involving his sister-in-law and her ex-husband.  Aplt. App. at 10 (¶ 15).  The ex-husband was also an employee of the San Miguel County Road and Bridge Department.  Aplt. App. at 10 (¶ 15).

Butler was asked to testify as a character witness on behalf of his sister-in-law in the child custody action.  Aplt. App. at 10 (¶ 16).  If he had not agreed to

testify at the hearing, then he would have been required to testify pursuant to a subpoena.  Aplt. App. at 10 (¶ 17).

At the hearing, he was asked, among other things, about the hours of operation for the San Miguel County Road and Bridge Department.  Aplt. App. at 10 (¶ 18).  He responded truthfully to the question based on his own personal knowledge.  Aplt. App. at 10 (¶ 19).  He neither stated nor implied that he was testifying on behalf of the County.  Aplt. App. at 10 (¶ 20).

On September 19, 2016, San Miguel County's Road and Bridge Director, Mike Horner, and San Miguel County's Human Resources Director, Kristl Howard, conducted an investigation into Butler's testimony at the hearing.  Aplt. App. at 8 (¶ 5), 9 (¶ 7), & 10 (¶ 22).  Following the investigation, Horner and Howard gave Butler a written reprimand and demotion.  Aplt. App. at 10 (¶ 23).  Horner and Howard demoted Butler for providing truthful testimony at the hearing. Aplt. App. at 10 (¶ 24).

## II.     PROCEDURAL HISTORY

Based on these factual allegations, Butler brought a 42 U.S.C. § 1983 claim against Horner and Howard and brought a state-law claim against the Board of County Commissioners for San Miguel County.  Aplt. App. at 11–13.  In the section 1983 claim, Butler alleged that Horner and Howard violated his First and

Fourteenth Amendment rights by disciplining and demoting him for providing truthful trial testimony.  Aplt. App. at 11 (¶ 30).

Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).  Aplt. App. at 15.  In the motion, Horner and Howard raised a qualified immunity defense to the section 1983 claim.  Aplt. App. at 18.  In support of this defense, they argued, first, that Butler's truthful trial testimony was not protected under the First Amendment because the testimony was not speech on a matter of public concern.  Aplt. App. at 20–22.  Second, they argued that their interest in promoting workplace efficiency outweighed Butler's free speech interest.  Aplt. App. at 22–23.

Butler responded that, first, under clearly established law, Butler's truthful trial testimony was speech on a matter of public concern.  Aplt. App. at 33–37.  As Butler observed, the speech was sworn trial testimony.  Aplt. App. at 36.  Also, the custody and welfare of children are matters of concern to the community.  Aplt. App. at 35–36.

Butler also responded, second, that Defendants had not carried their burden of showing that their interest in workplace efficiency outweighed Butler's free speech interest.  Aplt. App. at 37–38.  As Butler observed and as Defendants conceded, he did not even work in the same district as the co-worker about whom he testified at the child custody hearing.  Aplt. App. at 38.

## III.   THE RULING PRESENTED FOR REVIEW

The district court ruled in favor of Horner and Howard, dismissing the section 1983 claim.  Aplt. App. at 68.  The court concluded that Butler's trial testimony was not speech on a matter of public concern, reasoning that a child custody dispute is not of general interest, value, and concern to the public.  Aplt. App. at 66–67.  The court did not reach Horner and Howard's alternative argument for dismissing the section 1983 claim.  Aplt. App. at 22–23, 67.  The court also declined to exercise supplemental jurisdiction over the state-law claim, dismissing the state-law claim without prejudice.  Aplt. App. at 67–68.

## SUMMARY OF THE ARGUMENT

Contrary to the district court's conclusion, Butler's truthful court testimony was speech on a matter of public concern, protected by the First Amendment.  The Tenth Circuit has held, twice, that "[t]he law is clearly established that the First Amendment protects the right to testify truthfully at trial." *Langley v. Adams Cty., Colo.*, 987 F.2d 1473, 1479 (10th Cir. 1993) (quotations omitted); *see also Worrell v. Henry*, 219 F.3d 1197, 1205, 1216 (10th Cir. 2000).  Thus, under *Langley* and *Worrell*, all court testimony, regardless of its content, is speech on a matter of public concern.

Moreover, even in those jurisdictions in which some court testimony is not protected, courts have held that truthful court testimony on child custody is protected under the First Amendment. *See Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1505–07 (7th Cir. 1994). This is especially true in Colorado, given the Colorado legislature's repeated pronouncements about the importance of resolving child custody disputes fairly and amicably. *See, e.g.,* § 14-10-124, C.R.S. (2018) (recognizing that child custody disputes should be resolved "in an amicable and fair manner"); § 14-10-123.7(1), C.R.S. (2018) (recognizing "the negative impact divorce and separation can have on children when the parents continue the marital conflict . . .").

Finally, Defendants have not carried their burden of demonstrating that their interest in workplace efficiency outweighed Butler's free speech interest. Defendants admitted that Butler did even not work in the same district as the co-worker about whom he testified. Thus, it is unlikely that Butler's testimony impaired the ability of his co-worker to be disciplined or had a detrimental impact on worker relationship with the co-worker. Furthermore, Butler testified about the County's hours of operation at a child custody hearing. This channel of communication was not disruptive, and Bulter did not have a less disruptive channel available for providing this testimony.

For these reasons, this Court should reject Defendants' qualified immunity

defense and reverse the district court's dismissal of Butler's section 1983 claim.


## ARGUMENT

## I.  STANDARD OF REVIEW AND THE APPLIABLE LEGAL TEST

This Court reviews de novo district court's grant of a motion to dismiss. *The Estate of Lockett v. Fallin*, 841 F.3d 1098, 1106 (10th Cir. 2016). "To survive a motion to dismiss, a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 1106–07 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* at 1107 (quotations omitted). "[Q]ualified immunity does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quotations omitted). "Officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* (quotations omitted). "The more obviously egregious the conduct in light of

prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* (quotations omitted).

"A public employer may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1221 (10th Cir. 2017) (quotations omitted). "The First Amendment protection of a public employee's speech depends on a careful balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Lane v. Franks*, 134 S. Ct. 2369, 2374 (U.S. 2014).

This Court's review of First Amendment retaliation claims is governed by the test derived from *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006), and *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). The *Garcetti/Pickering* test consists of five steps:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Helget*, 844 F.3d at 1221 (quotations omitted). "The first three steps concern questions of law for the courts, and the last two concern questions of fact." *Id.*

Defendant's motion only argued for dismissal based on the second and third steps. Thus, only those steps are presently at issue.

## II. BUTLER'S TRUTHFUL COURT TESTIMONY AT A CHILD CUSTODY HEARING WAS SPEECH ON A MATTER OF PUBLIC CONCERN

The district court erred in concluding that, when Butler testified truthfully at a child custody hearing, his speech was not on a matter of public concern.

"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane*, 134 S. Ct. at 2380 (quotations omitted). "The inquiry turns on the content, form, and context of the speech. *Id.* (quotations omitted).

Here, as will be discussed below, (1) Butler's speech was on a matter of public concern because it was truthful court testimony; (2) more narrowly, Butler's speech was on a matter of public concern because it was truthful court testimony at a child custody hearing; and (3) this Court should not be persuaded otherwise by either the defense counsel's argument below or the district court's reasoning.

**A. THE TENTH CIRCUIT HAS CLEARLY ESTABLISHED THAT TRUTHFUL COURT TESTIMONY IS SPEECH ON A MATTER OF PUBLIC CONCERN**

As the Tenth Circuit has repeatedly held, "The law is clearly established that the First Amendment protects the right to testify truthfully at trial." *Langley v. Adams Cty., Colo.*, 987 F.2d 1473, 1479 (10th Cir. 1993) (quotations omitted); *see also Worrell v. Henry*, 219 F.3d 1197, 1205, 1216 (10th Cir. 2000); *Gilchrist v. Citty*, 71 F. App'x 1, 6 (10th Cir. 2003) (unpublished order and judgment); *accord Lane,* 134 S. Ct. at 2378.

Because recent dicta from this Court is arguably contrary to this conclusion, *see Deutsch v. Jordan*, 618 F.3d 1093, 1100 n.1 (10th Cir. 2010), it is necessary to retrace how this clearly-established law developed here in the Tenth Circuit.

This law appears to have its roots in *Melton v. City of Oklahoma City*, 879 F.2d 706, 714 (10th Cir. 1989) (*Melton I*), *overruled in part on other grounds on rehearing en banc.,* 928 F.2d 920 (10th Cir. 1991) (*Melton II*). In *Melton I*, a public employee testified at the trial of a former judge being prosecuted for malfeasance in his official duties. *Id.* at 712–13, 714. The *Melton I* Court held that the testimony was speech on a matter of public concern for two reasons. *Id.* at 714. First, the public would want to know the judge's guilt in a public trial related to his public duties. *Id.* Second, "[t]he First Amendment protects the right to testify truthfully at trial." *Id.*

After *Melton I*, the Tenth Circuit held that truthful court testimony, regardless of its subject matter, is "clearly established" as a matter of public concern. *Langley,* 987 F.2d at 1479.

Specifically, in *Langley*, a county employee, Langley, testified in support of a former co-worker's wrongful termination trial against the county. 987 F.2d at 1477. The opinion does not even describe, let alone analyze, either Langley's motive for testifying or the content of her court testimony. Rather, the opinion's just says that the co-worker was claiming he was terminated "in violation of his First and Fourteenth Amendment rights." *Id.* Speech other than court testimony in support of a wrongful termination claim, standing alone, is not speech on a matter of public concern. *See Workman v. Jordan*, 32 F.3d 475, 483 (10th Cir. 1994) (concluding that a public employee's testimony before a mere Hearing Officer in a posttermination proceeding – not before a court or grand jury – in support of his claim of wrongful termination was not speech on a matter of public concern).

After the co-worker's trial, Langley heard other co-workers allege sexual and racial discrimination by the county. *Langley,* 987 F.2d at 1477. Langley reported these allegations to the county's Equal Employment Opportunity officer, and then Langley made additional statements to the EEO officer in the course of his investigation. *Id.* at 1478. Thereafter, Langley's supervisor, Millsap, retaliated against Langley. *Id.*

Langley brought a wrongful termination case against Millsap and others. *Id.* at 1475–76. Langley asserted that the defendants violated her First Amendment rights by retaliating against her for two types of speech, specifically, "her testimony against the county in the [co-worker's] case *and* for her *later* reports of discriminatory practices by the county." *Id.* at 1478–79 (emphasis added). The defendants raised the defense of qualified immunity. *Id.* at 1476. The district court rejected that defense. *Id.* This Court affirmed the denial of Millsap's qualified immunity defense. *Id.* at 1482.

In affirming, this Court held that *both* Langley's court testimony *and* her later reports of discrimination were each clearly established as speech on a matter of public concern. *Id.* at 1479. Specifically, this Court reasoned as follows:

> *The law is clearly established that the "First Amendment protects the right to testify truthfully at trial."* . . . A reasonable person would have known of plaintiff's First Amendment rights. Plaintiff has thus met her burden of showing clearly established law governing her First Amendment claim.

*Id.* (emphasis added) (quoting *Melton I*, 879 F.2d at 714; other citation omitted); *see also Workman*, 32 F.3d at 483 (recognizing this holding in *Langley* but distinguishing *Langley* on the ground that, in *Workman*, the plaintiff's sworn testimony was not given in a court or grand jury proceeding).

Around the time of the *Langley* decision, a split developed among other Circuits concerning whether or not or not truthful trial testimony is *always* a matter

of public concern.  The Fifth Circuit answered this question in the affirmative, holding, "When an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern." *Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1578 (5th Cir. 1989). The Seventh Circuit disagreed, reasoning, "Although we share [the *Johnston* Court's] concern for the integrity of the judicial process, our cases have rejected a blanket rule according absolute First Amendment protection to communications made in the course of a lawsuit." *Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1505 (7th Cir. 1994).  The Third Circuit expressly chose to follow *Johnston*'s holding and expressly chose not to follow *Wright*'s reasoning. *Pro v. Donatucci*, 81 F.3d 1283, 1290–91 (3d Cir. 1996).

In *Worrell*, this Court both aligned itself with the Fifth and Third Circuits and recognized that *Langley*'s holding is still the law in the Tenth Circuit.  *See Worrell*, 219 F.3d at 1205, 1216.

Specifically, in *Worrell*, a former FBI agent, Worrell, testified for a criminal defendant, providing testimony on the arrest techniques that should have been used against that defendant.  *Id.* at 1201.  This testimony angered law enforcement officers, including Turner.  *Id.* at 1202.  Turner told the District Attorney not to hire Worrell.  *Id.*  The D.A. then rescinded Worrell's job offer.  *Id.* at 1202–03.

Worrell, in turn, brought First Amendment claims against Turner, the D.A., and other defendants. *Id.* at 1203.

The defendants moved for summary judgment on the merits or, in the alternative, on the grounds of qualified immunity. *Id.* at 1203–04. The district court granted summary judgment on the merits, and thus never reached the qualified immunity issue. *Id.* Regarding Turner, however, the Tenth Circuit held both that (1) the trial court erred in granting summary judgment to Turner on the merits and (2) Turner was not entitled to qualified immunity. *Id.* at 1213–16.

In so holding, the Tenth Circuit aligned itself with the Fifth and Third Circuits' conclusion that truthful trial testimony is *always* a matter of public concern. *Id.* at 1204–05. Specifically, relying on the Third Circuit's opinion in *Pro*, the *Worrell* Court concluded "that truthful testimony is protected by the First Amendment and that a government employee may not be fired or subjected to other adverse action as a result of such testimony." *Worrell*, 219 F.3d at 1204–05 (citing *Pro*, 81 F.3d at 1291; other citations omitted). When reaching this conclusion, the *Worrell* Court expressly adopted the Fifth Circuit's reasoning:

> The Fifth Circuit's decision in *Johnston* provides an overview of the reasons for protecting government employees' testimony. Absent such protection, employers seeking to silence truthful testimony could present employees with a difficult choice. 'Employees could either testify truthfully and lose their jobs or could lie to the tribunal and protect their job security.' Either choice would come at too high a price: 'Those able to

14

> risk job security would suffer state-sponsored retaliation
> for speaking the truth before a body entrusted with the
> task of discovering the truth.' On the other hand, '[t]hose
> unwilling or unable to risk unemployment would scuttle
> our efforts to arrive at the truth.' Affording
> constitutional protection to the truthful testimony of
> public employees protects both employees' interest in
> free expression and the judicial system's interest in
> arriving at the truth.

*Worrell*, 219 F.3d at 1205 (quoting *Johnston*, 869 F.2d at 1578).

In addition, when allowing Worrell's claim to proceed against Turner, the

*Worrell* Court did so because truthful trial testimony, regardless of its content, is

protected by the First Amendment. Granted, when analyzing the merits of

Worrell's claim against all the defendants, the Worrell court observed, "[T]he

parties agree that Mr. Worrell's testimony, which concerned proper arrest

procedures, addressed a matter of public concern." *Id.* at 1206. But later, when

analyzing the merits of Worrell's claim *against Turner specifically*, the *Worrell*

Court simply observed, "We have noted above that truthful testimony is protected

by the First Amendment." *Id.*

Perhaps most importantly, when addressing Turner's qualified immunity

defense, the Court did not even mention, let alone analyze, the content of Worrell's

trial testimony. Instead, relying on *Langley*, the *Worrell* Court simply reasoned,

"Decisions of this circuit have held that the right to testify truthfully is clearly

established." 219 F.3d at 1215 (citing *Langley*, 987 F.3d at 1479; and *Lytle v. City*

*of Haysville, Kan.*, 138 F.3d 857, 864 (10th Cir. 1998)).  Accordingly, the *Worrell*

Court held, "Because the right to testify truthfully is clearly established, Mr.

Turner is not entitled to qualified immunity on this record." *Id.* at 1216 (citing

*Lytle,* 138 F.3d at 864 n. 2; *Langley,* 987 F.2d at 1479; and *Melton I,* 879 F.2d at

714).

Thereafter, in an unpublished opinion, this Court once again followed the

holdings in *Langley* and *Worrell* that truthful trial testimony is always speech on a

matter of public concern.  *See Gilchrist*, 71 Fed. Appx. at 4, 6.  In *Gilchrist*, the

plaintiff claimed that he was terminated for truthful testimony in violation of his

First Amendment rights, the defendants raised a qualified immunity defense, and

the Court rejected that defense.  *Id.*  The *Gilchrist* Court reasoned, "It is well-

established that 'truthful testimony is protected by the First Amendment and that a

government employee may not be fired or subjected to other adverse action as the

result of such testimony.'"  *Id.* (quoting *Worrell,* 219 F.3d at 1204–05).

The holdings in *Langley* and *Worrell* found further support in *Lane*, 134

S.Ct. 2369.  In *Lane*, the United States Supreme Court observed that particular

testimony was on a matter of public concern both because of its content (corruption

of a public program and misuse of state funds) and because the testimony took

place in court.  134 S.Ct. at 2380.  "Unlike speech in other contexts, testimony

under oath has the formality and gravity necessary to remind the witness that his or

her statements will be the basis for official governmental action, action that often affects the rights and liberties of others." *Id.* (quotations omitted).

Accordingly, as the Tenth Circuit held in both *Langley* and *Worrell*, the law is clearly established in the Tenth Circuit that the First Amendment protects the right to testify truthfully at trial.

This Court should not be persuaded otherwise by dicta in *Deutsch*, 618 F.3d at 1100 n.1. In *Deutsch*, the Court held that trial testimony responding to a charge of public corruption was speech on a matter of public concern. 618 F.3d at 1101. In reaching this holding, the *Deutsh* Court stated, in dicta, that the Tenth Circuit "has not explicitly adopted" the rule that "trial testimony is per se a matter of public concern." *Id.* at 1100 n.1; *see also Helget*, 844 F.3d at 1227–28 (Tymkovich, C.J., concurring) (agreeing with this dicta in *Deutsch*).

This panel is not bound by this dicta in *Deutsch*. Rather, this panel is bound by the holdings in *Langley* and *Worrell*. "Under the doctrine of stare decisis, [a] panel cannot overturn the decision of another panel of this court barring en banc reconsideration, a superseding contrary Supreme Court decision, or authorization of all currently active judges on the court." *United States v. Edward J.*, 224 F.3d 1216, 1220 (10th Cir. 2000) (quotations omitted).

Indeed, even if the later pronouncement in *Deutsch* were not dicta, this panel would still be bound by the earlier holdings in *Langley* and *Worrell*. "[W]hen

faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom." *Haynes v. Williams*, 88 F.3d 898, 900 (10th Cir. 1996).

Here, Butler testified truthfully at a court hearing. Accordingly, contrary to the district court's conclusion, Bulter's truthful testimony was speech on a matter of public concern. *See Worrell*, 219 F.3d at 1205, 1216; *Langley*, 987 F.2d at 1479; *Gilchrist*, 71 F. App'x at 6.

### B. IN THE ALTERNATIVE, THE LAW IS CLEARLY ESTABLISHED THAT TRUTHFUL COURT TESTIMONY ABOUT CHILD CUSTODY IS SPEECH ON A MATTER OF PUBLIC CONCERN

The district court's opinion was erroneous, not only because all truthful trial testimony is on a matter of public concern, but also on a narrower ground: the law is clearly established that truthful trial testimony *about child custody* is speech on a matter of public concern.

Even in jurisdictions that leave open the possibility that some truthful trial testimony may not be protected speech, the Courts observe, "[E]xcept in the rarest of cases . . . , truthful testimony is protected speech." *Wright*, 40 F.3d at 1507 n.6. Truthful trial testimony on child custody is not one of those rarest of cases, for two reasons.

First, the Colorado Supreme Court and the Colorado General Assembly both recognize that the welfare and custody of children is a matter of interest to the

community.  *See Gelfand v. Cherry Creek Sch. Dist.,* 2009 WL 8757859, at \*10

(D. Colo. No. 07-CV-01923-CMA-CBS, June 10, 2009) (unpublished opinion and

order) (concluding that a telephone call reporting child abuse was speech on a

matter of public concern, partly because of "the fact that both the state and federal

government have adopted legislation addressing issues of child abuse").

The Colorado general assembly has specifically stated that the "the safety

and protection of children" is a matter "of statewide concern."  § 19-3-100.5(1),

C.R.S. (2018).  The general assembly also "urges parents to share the rights and

responsibilities of child-rearing and to encourage the love, affection, and contact

between the children and the parents."  § 14-10-124, C.R.S. (2018).  The general

assembly recognizes that child custody disputes should be resolved "in an amicable

and fair manner" and that, in most cases, both parents should have a relationship

with their children.  § 14-10-104.5, C.R.S. (2018).  In addition,

> [t]he general assembly recognizes research that
> documents the negative impact divorce and separation
> can have on children when the parents continue the
> marital conflict, expose the children to this conflict, or
> place the children in the middle of the conflict or when
> one parent drops out of the child's life. This research
> establishes that children of divorce or separation may
> exhibit a decreased ability to function academically,
> socially, and psychologically because of the stress of the
> divorce or separation process.

§ 14-10-123.7(1), C.R.S. (2018).  Accordingly, the general assembly has

authorized courts to establish educational programs "to educate parents about the

divorce process and its impact on adults and children and to teach coparenting skills and strategies so that parents may continue to parent their children in a cooperative manner." *Id.*

Furthermore, given this overarching public concern for the welfare and custody of children, Colorado courts recognize the doctrine of parens partiae. Under that doctrine, the state asserts an interest in the protection of those, such as children, who cannot care for themselves. The Colorado Supreme Court recognized this doctrine as a basis to assert jurisdiction over children domiciled in the state for dependency hearings, *E.P. v. Dist. Court of Garfield Cty.*, 696 P.2d 254, 258-59 (Colo. 1985), to justify actions to deprive parents of their liberty interest in raising their children, *Gomes v. Wood,* 451 F.3d 1122, 1128 (10th Cir. 2006), and to justify the entry of child custody orders in cases of an emergency, *see Wilson v. Wilson*, 474 P.2d 789, 791 (Colo. 1970).

Accordingly, the Colorado legislature and courts have recognized that the issues of child welfare and custody are ones of statewide concern.

Second, at least one other jurisdiction has recognized that court testimony in child custody cases is speech on a matter of public concern. *See Wright*, 40 F.3d at 1506–07.

In *Wright*, a social worker employed by the Department of Children and Family Services disagreed with her supervisors over how to investigate and report

particular allegations of child abuse. *Id.* at 1495. As part of this disagreement, the social worker testified at a child custody hearing, criticizing the Department. *Id.* at 1497–98.[1] The Department took adverse employment action against the social worker. *Id.* She sued the Department and others for violating her First Amendment rights. *Id.* at 1498. The district court granted summary judgment to the defendants. *Id.* at 1495.

On appeal, the Seventh Circuit concluded that, so long as the Department did not terminate the social worker for testifying untruthfully, the social worker's trial testimony was speech on a matter of public concern. *Id.* at 1505–07. This holding is especially significant given that, earlier in the opinion, the Seventh Circuit reasoned that not all trial testimony will qualify as speech on a matter of public concern. *Id.* at 1505.

Accordingly, for these two reasons, this Court should conclude that truthful trial testimony at a child custody hearing is speech on a matter of public concern.

Here, Bulter testified truthfully at a child custody hearing. Accordingly, contrary to the district court's conclusion, his speech was on a matter of public

---

[1] The social worker also claimed that she engaged in protected speech by (1) submitting, without the Department's authorization, a report to the juvenile judge overseeing the child custody case; and (2) writing a letter to the attorney for a child's mother, encouraged the mother to sue the Department. *Wright,* 40 F.3d at 1498, 1502, 1504. The Seventh Circuit concluded that, in those two instances, the Department's interest in promoting efficiency of the public service outweighed the social worker's free speech interest. *Id.* at 1503–04.

concern, not only because the speech was truthful trial testimony, *see, e.g., Langley*, 987 F.2d at 1479, but also because the speech was truthful trial testimony about child custody, *see, e.g., Wright*, 40 F.3d at 1506–07.

### C. THIS COURT SHOULD NOT BE PERSUADED OTHERWISE BY EITHER DEFENDANT'S ARGUMENT OR THE DISTRICT COURT'S REASONING

This Court should not be persuaded otherwise by either (1) the primary case upon which the defendants relied below or (2) the district court's reasoning in its order.

First, in Defendants' motion, they relied primarily on *Morris v. City of Colorado Springs*, 666 F.3d 654 (10th Cir. 2012). In *Morris*, a public employee claimed that her employer committed torts against her. *Id.* at 658–59. She provided her employer with notice of her claims, and then the employer moved her into a different position. *Id.* at 659. Thereafter, she brought a section 1983 claim, alleging that her employer was retaliating against her for exercising her First Amendment rights through the notice of claims. *Id.* This Court rejected that argument, observing, "Speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern." *Id.* at 661 (quotations omitted).

The present case is different from *Morris*. Unlike the nurse in *Morris*, Butler's speech was made in the context of sworn court testimony, not in a private

letter to his employer. Further, unlike in *Morris*, the speech had nothing to do with

internal personnel disputes or working conditions. Rather, Butler testified as to his

personal experience as to the hours of operation of the Road and Bridge

Department to assist a court in making a child custody determination, not to

complain about hours or working conditions. Thus, the content, form, and context

of Butler's speech are all different than those presented to this Court in *Morris*.

Accordingly, *Morris* provides no support for Defendants' position.

Second, when the district court concluded that Butler's trial testimony was

not on a matter of public concern, the district court reasoned that Butler likely had

personal motives for providing the testimony. Specifically, the district court

reasoned, "Butler gave testimony in support of a family member who was

presumably trying to win custody of her child in a private, domestic relations case.

The factual allegations suggest that Butler's motive in giving the testimony was to

support his sister-in-law in a highly personal matter." Aplt. App. at 66.

The factual allegations in the complaint, however, are contrary to the district

court's conclusion. The complaint alleges, "Butler would have been required to

testify pursuant to a subpoena had he not agreed to testify at the hearing." Aplt.

App. at 10 (¶ 17). Accordingly, Butler's testimony was not wholly personal and

voluntary but, rather, would have been compelled by subpoena.

Furthermore, even if Butler testified for personal reasons, this one fact, standing alone, does not eliminate the First Amendment protection for truthful trial testimony. As noted above, in *Langley* and *Worrell*, the Court did not analyze the witnesses' motives when concluding that their truthful court testimony was speech on a matter of public concern. *See Worrell*, 219 F.3d at 1205, 1216; *Langley*, 987 F.2d at 1479.

Moreover, in *Deutsch*, the Tenth Circuit expressly held that a public employee's truthful trial testimony was on a matter of public concern even though the employee had a personal motive for providing the testimony. *See* 618 F.3d at 1099–1102. Specifically, in *Deutsch*, a police chief used the city's petty cash to purchase a laptop computer. *Id.* at 1096. Based on this purchase, a private citizen accused the police chief of misappropriating private funds. *Id.* The police chief brought a defamation lawsuit against the private citizen and the police chief testified in support of his lawsuit. *Id.* The city manager later fired him, allegedly for his testimony in support of his lawsuit. *Id.* at 1097.

The Tenth Circuit concluded that even though the police chief had a personal motive for his testimony at the defamation trial, his testimony was nonetheless on a matter of public concern. *Id.* at 1100–01. The *Deutsch* Court reasoned,

> [T]he speaker's having a highly personal motive for a
> disclosure does not necessarily mean that the speech is

not a matter of public concern. Whistle blowers may often bear personal grudges. Some subject matter is so imbued with the public interest that speech regarding it will almost always be a matter of public concern, whatever the context.

*Id.* at 1100.

For these reasons, neither *Morris* nor the district court's reasoning should alter the conclusion that Butler's truthful trial testimony at the child custody hearing was speech on a matter of public concern.

## III. DEFENDANTS HAVE NOT SHOWN THAT THEIR INTEREST IN PROMOTING WORKPLACE EFFICIENCY OUTWEIGHED BUTLER'S FREE SPEECH INTEREST

Not only was Butler's speech on a matter of public concern, but also Defendants have not carried their burden of showing that their interest in workplace efficiency outweighed Butler's free speech interest.

### A. ALTHOUGH THE DISTRICT COURT DID NOT REACH THIS ISSUE, THIS COURT SHOULD STILL RESOLVE IT

Because the district court granted Defendant's motion under the second step of the *Garcetti*/*Pickering* test, the district court did not reach the test's third step. Aplt. App. at 67. Accordingly, if this Court concludes that the district court erred under the second step, this Court has the option of remanding the case to the district court to consider the third step. However, Butler respectfully requests that this Court resolve the third step now rather than remanding the issue.

Resolving the third step now would be more efficient than sending it back to the district court, for two reasons. First, the issue is properly before this Court, because the issue was fully briefed below and the issue could serve as a ground for affirming the district court's order. *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1161 n.1 (10th Cir. 2017) (this Court may affirm a district court's decision for any reason supported by the record).

Second, even if this Court were to remand the issue, the issue would likely come back to this Court again shortly after the district court's order. If the district court rules in favor of Butler, then Defendants will likely pursue an interlocutory appeal. *See Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 856 (10th Cir. 2016) (when a district court denies a qualified immunity defense raised in a motion to dismiss, this Court has jurisdiction over an interlocutory appeal from that order). Alternatively, if the district court rules in favor of Defendants, then Butler will appeal from that final judgment.

For these reasons, Butler respectfully requests that this Court resolve the third step of the *Garcetti*/*Pickering* test now, in the present appeal.

### B. THIS COURT SHOULD RESOLVE THIS ISSUE IN BUTLER'S FAVOR

This Court should hold that Defendants have not carried their burden of showing that their interest in promoting workplace efficiency outweighed Butler's free speech interest.

Under the third step of the *Garcetti/Pickering* test, "the *employer* bears the burden of justifying its regulation of the employee's speech." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1207 (10th Cir. 2007) (emphasis in original).

"[T]he question is whether the employer has an efficiency interest which would justify it in restricting the particular speech at issue." *Id.* (quotations omitted). "In performing the balancing, the statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Id.* (quotations omitted). In considering the time, place, and manner of the speech, this Court "take[s] into account whether the employee used less disruptive internal channels of communication." *Belcher v. City of McAlester, Oklahoma*, 324 F.3d 1203, 1208 (10th Cir. 2003) (quotations omitted).

"Pertinent considerations include whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Brammer-Hoelter*, 492 F.3d at 1207 (quotations omitted). "[T]he only public employer interest that can outweigh a public employee's recognized speech rights is the interest in avoiding direct disruption, *by*

*the speech itself,* of the public employer's *internal* operations and employment relationships." *Id.* (quotations omitted).

Here, Defendants did not carry their burden of justifying their regulation of Butler's speech. The manner, time, and place of the expression all demonstrate that the expression was not disruptive at Butler's workplace. Butler testified about the County's hours of operation at a child custody hearing. This channel of communication was not disruptive, and Bulter did not have a less disruptive channel available for providing this testimony.

Furthermore, in Defendants' motion, Defendants admitted that Butler's co-worker "did not work in the district that Plaintiff supervised and Plaintiff did not have direct supervisory authority over that employee." Aplt. App. at 23. Thus, it is unlikely that Butler's testimony impaired the ability of his co-worker to be disciplined or had a detrimental impact on worker relationship with the co-worker. And there is no allegation that Butler and the co-worker had a close working relationship or that Butler's speech in anyway impeded the co-worker's ability to do his job.

Thus, the facts are insufficient to support the conclusion that Butler's speech had any effect on the efficiency of the County's operations. Accordingly, this Court should conclude that Defendants have not carried their burden of demonstrating that their interests in promoting workplace efficiency outweighed

Butler's free speech interests. Alternatively, if this Court determines that it does not have enough factual information to resolve this issue, then this Court should order that the parties be permitted to conduct discovery on this issue and that Defendants be permitted to raise this issue again in a summary judgment motion.

## CONCLUSION

For these reasons, Butler requests that this Court hold, first, that Butlers' truthful court testimony at the child custody hearing was speech on a matter of public concern, protected by the First Amendment. This Court should also hold, second, that Defendants have not carried their burden of demonstrating that their interest in workplace efficiency outweighed Butler's free speech interest. Alternatively, if this Court determines that it does not have enough factual information to resolve this second issue, then this Court should order that the parties be permitted to conduct discovery on this second issue and that Defendants be permitted to raise this issue again in a summary judgment motion.

Butler further requests that, based on these two holding, this Court reverse the district court's dismissal of Butler's section 1983 claim against Horner and Howard.

Respectfully submitted this 13th day of March, 2018.

/s/ Benjamin P. Meade
Nicholas W. Mayle, Esq.
Damon Davis, Esq.
Benjamin P. Meade, Esq.
Killian Davis Richter & Mayle, P.C.
Attorneys for Appellant Jerud Butler
202 North 7th Street
Grand Junction, CO 81501
970-241-0707
ben@killianlaw.com

## Statement of Counsel as to Oral Argument

Oral argument is appropriate to address how the law developed in the Tenth Circuit and United States Supreme Court on the issue of whether truthful trial testimony is always a matter of public concern.  Oral argument is also appropriate to address Colorado's public policy regarding child custody hearings, and how such public policy made Butler's testimony speech on a matter of public concern. Oral argument is also appropriate to address the facts and law concerning Defendants' allegation that their interest in workplace efficiency outweighed Butler's free speech interest.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 6,669 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word version 14 in 14 point times new roman font

Date: March 13, 2018

*/s/ Benjamin P. Meade*_____
Nicholas W. Mayle, Esq.
Damon Davis, Esq.
Benjamin P. Meade, Esq.
Killian Davis Richter & Mayle, P.C.
Attorneys for Appellant Eugene Foster
202 North 7th Street
Grand Junction, CO 81501
970-241-0707
ben@killianlaw.com

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;
(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;
(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, {MalwareBytes Premium Version 3.4.4; Updated 3/12/2018}, and according to the program are free of viruses.

*/s/ Benjamin P. Meade*_____
Nicholas W. Mayle, Esq.
Damon Davis, Esq.
Benjamin P. Meade, Esq.
Killian Davis Richter & Mayle, P.C.
Attorneys for Appellant Eugene Foster
202 North 7th Street
Grand Junction, CO 81501
970-241-0707
ben@killianlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2018, I electronically filed the foregoing using the court's CM/ECF system.

Jeffrey L. Driscoll, Esq. (jdriscoll@wth-law.com)


Date:  March 13, 2018

/s/Benjamin P. Meade _____
Nicholas W. Mayle, Esq.
Damon Davis, Esq.
Benjamin P. Meade, Esq.
Killian Davis Richter & Mayle, P.C.
Attorneys for Appellant Jerud Butler
202 North 7th Street
Grand Junction, CO 81501
ben@killianlaw.com
970-241-0707

## ATTACHMENT

Order Dated December 7, 2017, Dismissing the Complaint

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   17-cv-00577-WYD-GPG

JERUD BUTLER,

      Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS for San Miguel County;
MIKE HORNER, in his individual capacity; and
KRISTL HOWARD, in her individual capacity,

      Defendants.

---

## ORDER

---

I.   INTRODUCTION AND BACKGROUND

THIS MATTER is before the Court on the Defendants' Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6), filed May 15, 2017.  (ECF No. 24).  On June 22,

2017, Plaintiff filed his response in opposition to the motion, and on July 14, 2017, the

Defendants replied.  (ECF Nos. 33 and 36).

Plaintiff Jerud Butler, an employee of the San Miguel County Road and Bridge

Department, filed suit under 42 U.S.C. § 1983 against the San Miguel Board of County

Commissioners and two San Miguel County officials, Mike Horner and Kristl Howard.

The Complaint alleges that both Horner and Howard retaliated against Butler in violation

of his constitutional rights.  The Complaint also alleges a state law claim for violation of

the Lawful Activities Statute against the Board of County Commissioners ("Board").  The

Defendants move to dismiss the complaint for failure to state a claim upon which relief

can be granted and assert the defense of qualified immunity. For the reasons stated below, I grant the motion.

On September 1, 2016, Butler was promoted to a District Supervisor position with the San Miguel County, Road and Bridge Department. (Compl. ¶ 14). On September 7, 2016, Butler testified in a child custody hearing in Montrose County, Colorado, case number 2015-DR-202, involving his sister-in-law and her ex-husband, who is also an employee of the San Miguel County, Road and Bridge Department. (Compl. ¶ 15). Butler testified as a character witness on behalf of his sister-in-law and alleges that had he not agreed to testify at the hearing, he would have been required to testify pursuant to a lawful subpoena. (Compl. ¶¶ 16-17). In response to questions, Butler testified as to the hours of operation for the San Miguel County, Road and Bridge Department among other things. (Compl. ¶ 18). On September 19, 2016, Horner and Howard conducted an investigation into Butler's testimony given at the custody hearing. Following the investigation, Horner and Howard issued Butler a Written Reprimand and demotion. (Compl. ¶¶ 22-23). Butler alleges that he was demoted as a result of giving truthful testimony at the child custody hearing, which was not a part of his official duties but did involve a matter of public concern. (Compl. ¶¶ 24-30).

II.    STANDARD OF REVIEW

Defendants seek dismissal of Butler's claims pursuant to Fed. R. Civ. P. 12(b)(6). A defendant may move to dismiss a claim under Rule 12(b)(6) where the plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court's inquiry is "whether the complaint contains 'enough facts to state a claim to relief

that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). When analyzing a 12(b)(6) motion, "all well-pleaded factual allegations ... are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State School for Deaf and Blind*, 173 F. 3d 1226, 1236 (10th Cir. 1999). "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle it to relief." *Id.*

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. Additionally, the Tenth Circuit has instructed that "the degree of specificity necessary to establish plausibility and fair notice, and

therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

"The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 555 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

The Defendants attached information to their motion to dismiss related to the Written Reprimand issued to Butler by Horner and Howard. (*See* Mot. to Dismiss at 3-4). Generally, I consider only the contents of the complaint when ruling on a Rule 12(b)(6) motion. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Exceptions to this general rule include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and "matters of which a court may take judicial notice." *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *see also GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (stating that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a

motion to dismiss.").  Here, Butler contends that I cannot consider the Written

Reprimand because it is "not central to [his] claims."  (Resp. at 2).  However, I need not

decide whether this information falls into one the exceptions noted above because I

decline to review or consider the Written Reprimand as part of my analysis under Rule

12(b)(6).

III.   ANALYSIS

A.   Federal Claim

Defendants urge dismissal of Plaintiff's First Amendment claim arguing that the

allegations fail to demonstrate that Butler's speech is constitutionally protected because

it was not a matter of public concern and the balancing of interests favors the

Defendants.  Defendants also argue that the individual Defendants are entitled to

qualified immunity because there was no constitutional violation.  In response, Butler

argues that because he alleged sufficient facts to establish that his testimony was a

matter of public concern and that his speech had no effect on the efficiency of County

operations, the motion to dismiss must be denied.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), held that

government officials performing discretionary functions are shielded from liability for civil

damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person should have known.  *Harlow* places a

presumption in favor of immunity of public officials acting in their individual capacities.

*Schalk v. Gallemore*, 906 F.2d 491, 499 (10th Cir. 1990).  "When a defendant asserts

the defense of qualified immunity, the onus is on the plaintiff to demonstrate (1) that the

official violated a statutory or constitutional right, *and* (2) that the right was clearly established at the time of the challenged conduct." *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016) (internal citations and quotations omitted).  If the plaintiff fails to establish either of these prongs, the defendant prevails on its defense.  *Id.* at 1134-35.  The court has "discretion to decide which of the two prongs should be decided first in light of the circumstances in the particular case at hand."  *Id.* at 1135.

Turning to the first prong of the qualified immunity analysis in the context of a motion to dismiss, I analyze "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  This determination turns on the substantive law regarding the constitutional right at issue.  *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282-83 (10th Cir. 2007).  In the case at hand, Defendants argue that Butler cannot show that his First Amendment right to free speech was violated because his speech is not constitutionally protected as a matter of law.

The Supreme Court *in Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 574 (1968), held that an employee who speaks on issues of public importance may not be dismissed from public employment.  "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) (internal citations omitted).  The interests of public employees on commenting on matters of public concern must, however, be balanced with the employer's interests in promoting the efficiency of the public services it

performs through its employees. *Morris v. City of Colorado Springs*, 666 F.3d 654, 661 (10th Cir. 2012).  To achieve this balance in analyzing public-employee free speech claims, the court uses the following test derived from the Supreme Court's decisions in both *Garcetti* and *Pickering* ("*Garcetti-Pickering* test"): "(1) whether the speech was made pursuant to an official's duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests as an employer in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct." *Id.* (internal citations omitted).  The first three prongs are issues of law to be decided by the court while the last two prongs are decided by the factfinder. *Id.*

Here, as to the first prong of the *Garcetti-Pickering* test, the Defendants concede that the speech at issue was not made pursuant to Butler's duties as a District Supervisor with the San Miguel County, Road and Bridge Department.  Rather, Defendants contend that Butler's speech did not involve matters of public concern and that its interests as an employer outweigh Butler's free speech rights.

The Supreme Court held that "[s]peech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, 134 S.Ct. 2369, 2380, 189 L.Ed.2d 312 (2014) (internal quotations and citations omitted).  "The

inquiry turns on the content, form, and context of the speech." *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 147–148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). The *Lane* Court held that sworn testimony about corruption in a public program and misuse of state funds "obviously involves a matter of significant public concern." *Id.*

I now turn to the allegations in the Complaint, which I construe in a light most favorable to Butler. The Complaint contains limited facts as to what Butler actually stated at the child custody hearing. Butler alleges that he testified as a character witness on behalf of his sister-in-law against her ex-husband in a child custody hearing. Butler further alleges that his truthful testimony involved "among other things, ... the hours and operation for the San Miguel County Road and Bridge Department." (Compl. ¶ 18). There are no allegations as to any corruption or misuse of taxpayer funds by the San Miguel County government nor any information that Butler's testimony relates to any matter of political, social or other concern to the community. Instead, Butler gave testimony in support of a family member who was presumably trying to win custody of her child in a private, domestic relations case. The factual allegations suggest that Butler's motive in giving the testimony was to support his sister-in-law in a highly personal matter. When "determining whether speech pertains to a matter of public concern, the court may consider the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Brammer–Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1205 (10th Cir. 2007). While a highly personal motive does not necessarily mean that the speech is not a matter of public concern, Butler has not

shown that the personal nature of a family member's child custody dispute is the subject of general interest, value, and concern to the public. *Id.*

Given Tenth Circuit authority instructing "[c]ourts [to] construe public concern very narrowly," *Leverington v. City of Colorado Springs*, 643 F.3d 719, 727 (10th Cir. 2011), I find that Butler's testimony, given at his sister-in-law's child custody hearing, lacks the broader public purpose necessary to afford it protection under the First Amendment.  I find as a matter of law that Butler's claim fails on the second prong of the *Garcetti-Pickering* test; Butler's speech is not constitutionally protected because it is not a matter of public concern.  In light of this finding, I need not reach the third prong of the *Garcetti-Pickering* test.  Accordingly, Plaintiff's First Claim for Relief is dismissed on this basis alone.[1]

B.    State Law Claim

The only remaining claim is Butler's state law claim brought under the Lawful Activities Statute.  Colo. Rev. Stat. § 24-34-402.5.  28 U.S.C. § 1367(a) grants supplemental or pendent jurisdiction to federal district courts over a plaintiff's state law

---

[1]  In the Complaint's First Claim for Relief, Butler alleges a claim under 42 U.S.C. § 193 for violations of both the First and Fourteenth Amendments to the United States Constitution.  (Compl. at 4).  The First Amendment applies to the states through the Fourteenth Amendment.  *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n. 1, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996).  The Complaint contains no specific allegations that could support a distinct, plausible Fourteenth Amendment violation, thus it is properly dismissed under Rule 12(b)(6).  Alternatively, to the extent that Butler's Fourteenth Amendment claim rests on a theory that he suffered harm based on the denial of his constitutional right to speak without retaliation, *see Paul v. Davis*, 424 U.S. 693, 711, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), my determination that there was no First Amendment violation requires a similar conclusion that the Defendants did not violate Butler's Fourteenth Amendment rights.

claims which arise out of the same transaction or occurrence as the federal claims.

However, a district court may decline to exercise supplemental jurisdiction if the district

court has dismissed all claims over which it has original jurisdiction.  28 U.S.C.

§ 1367(c)(3).  "When all federal claims have been dismissed, the court may, and usually

should, decline to exercise jurisdiction over any remaining state claims."  *Smith v. City*

*of Enid By and Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).

Here, because I dismissed Butler's federal claim, I decline to exercise supplemental

jurisdiction over his remaining state law claim.  Thus, I dismiss it without prejudice.

IV.   CONCLUSION

Based upon the foregoing, it is

ORDERED that the Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P.

12(b)(6) (ECF No. 24) is **GRANTED** to the extent that Plaintiff's First Claim for Relief,

brought under the First and Fourteenth Amendments, is **DISMISSED WITH**

**PREJUDICE,** and Plaintiff's Second Claim for Relief, brought under state law, is

**DISMISSED WITHOUT PREJUDICE.**  The Clerk of Court shall close this case.

Dated:  December 7, 2017

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge