FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 29, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

| | |
|---|---|
| JERUD BUTLER, | |
| Plaintiff - Appellant, | |
| v. | No. 18-1012 |
| BOARD OF COUNTY COMMISSIONERS for San Miguel County; MIKE HORNER, in his individual capacity; KRISTL HOWARD, in her individual capacity, | |
| Defendants - Appellees. | |

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:17-CV-00577-WYD-GPG)**

_____

Benjamin P. Meade (Nicholas W. Mayle and Damon Davis with him on the briefs), Killian Davis Richter & Mayle, PC, Grand Junction, Colorado, for Plaintiff-Appellant.

Jeffrey L. Driscoll, Williams, Turner & Holmes, P.C., Grand Junction, Colorado, for Defendants-Appellees.

_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **LUCERO**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

The First Amendment protects a government employee's speech (1) made as a citizen (2) on a matter of public concern (3) if the employee's right to speak outweighs the government's interest as an employer in an efficient workplace. These are the first three steps of the familiar five-part <u>Garcetti</u>/<u>Pickering</u> analysis[1] and they present legal questions for a court to resolve. This appeal focuses on the second inquiry, whether a public employee's speech is on a matter of public concern. Generally, a matter of public concern relates to any matter of political, social, or other concern to the community. In order to determine whether speech is on a matter of public concern, the Supreme Court has directed that we consider the content, form and context of the particular speech at issue in a given case.

Plaintiff-Appellant Jerud Butler is a government employee, a supervisor for the San Miguel County, Colorado, Road and Bridge Department. He alleges that his supervisors violated his First Amendment freedom of speech when they demoted him for testifying truthfully in state court as a character witness for his sister-in-law. The state-court proceeding concerned a domestic child custody dispute between Butler's sister-in-law and her ex-husband, who also works for the County's Road and Bridge Department.

The district court dismissed Butler's First Amendment claim with prejudice under Fed. R. Civ. P. 12(b)(6), concluding at step two of the <u>Garcetti</u>/<u>Pickering</u> analysis that Butler's testimony at the custody hearing, given as a private citizen, was

---

[1] <u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006); <u>Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205</u>, 391 U.S. 563 (1968).

not on a matter of public concern.  Having jurisdiction under 28 U.S.C. § 1291, we

AFFIRM.  In doing so, we reject Butler's assertion that <u>any</u> truthful sworn testimony

given by a government employee in court as a citizen is per se always a matter of

public concern.  The rule Butler suggests, and which several circuits have adopted,

gives dispositive weight to the form and context of a public employee's speech

(sworn testimony in a judicial proceeding), but fails to give any weight to the content

of that testimony.  We, instead, employ a case-by-case approach, considering

whether, in this particular case, the content of Butler's testimony, as well as its form

and context, make it speech involving a matter of public concern.  After applying

such an analysis here, we conclude that Butler's testimony during the child custody

proceeding was not on a matter of public concern.  Although Butler's testimony

involved a matter of great significance to the private parties involved in the

proceeding, it did not relate to any matter of political, social or other concern of the

larger community.

## I. BACKGROUND

At the motion-to-dismiss stage, we accept as true all of Butler's well-pled

factual allegations and view them in the light most favorable to him.  <u>See</u> <u>Straub v.</u>

<u>BNSF Ry. Co.</u>, 909 F.3d 1280, 1287 (10th Cir. 2018).  Butler alleged the following:

He works for the San Miguel County Road and Bridge Department.  On September 1,

2016, the County promoted Butler to a district supervisor position.  Six days later, on

September 7, "Butler testified in a child custody hearing in Montrose County . . .

involving his sister-in-law and her ex-husband, who is also an employee of the San

3

Miguel County, Road and Bridge Department." (Aplt. App. 10 ¶ 15.) "Butler was asked to testify as a character witness on behalf of his sister-in-law"; he "would have been required to testify pursuant to a subpoena had he not agreed to testify . . . ." (Id. ¶¶ 16-17.) "At the hearing, Butler was asked, among other things, about the hours of operation for the San Miguel County Road and Bridge Department." (Id. ¶ 18.) He "responded truthfully to the question based upon his own personal knowledge." (Id. ¶ 19.) "At the hearing, Butler neither stated nor implied that he was testifying on behalf of the County." (Id. ¶ 20.)

Almost two weeks later, Mike Horner, who was San Miguel County's Road and Bridge Director, and Kristl Howard, the County's Human Resources Director, "conducted an investigation into Butler's testimony at the hearing." (Id. 10 ¶ 22.) "Following the investigation, Horner and Howard gave Butler a Written Reprimand and demotion."[2] (Id. ¶ 23.)

Butler sued the two County directors who demoted him, Horner and Howard, under 42 U.S.C. § 1983, alleging that they violated Butler's right to free speech under

---

[2] In addition to these facts that Butler alleged in his complaint, Defendants also asked the district court, over Butler's objection, to consider facts contained in the written reprimand that the County issued Butler. Butler had not attached that document to his complaint and, although Defendants asserted that they attached the written reprimand to their motion to dismiss, it is not clear that they actually did so. In any event, the district court declined to consider the contents of the written reprimand when the court ruled on Defendants' motion to dismiss. Although on appeal both sides cite to facts apparently contained in the reprimand, neither side has provided us with a copy of the reprimand. Under these circumstances, we also decline to consider it. We do not need to consult the contents of the written reprimand, in any event, in order to resolve this appeal because the reprimand's contents appear to pertain only to step three of the Garcetti/Pickering test.

the First and Fourteenth Amendments by demoting him for testifying truthfully at the

custody hearing.  See Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council

31, 138 S. Ct. 2448, 2463 (2018) (noting First Amendment applies to states through

Fourteenth Amendment).  Defendants moved to dismiss this claim under Fed. R. Civ.

P. 12(b)(6).  The district court granted that motion, ruling that Butler had failed to

allege a First Amendment violation because his triggering speech was not on a matter

of public concern, and the court dismissed with prejudice Butler's § 1983 claims

against the two individual Defendants.  It is that decision that Butler challenges on

appeal.[3]

## II. DISCUSSION

We review de novo the district court's decision to grant Defendants' Rule

12(b)(6) motion to dismiss and in doing so we accept as true all well-pled factual

allegations, viewing those facts in the light most favorable to Butler.  See Straub, 909

F.3d at 1287.  "To withstand a motion to dismiss, a complaint must contain enough

allegations of fact 'to state a claim to relief that is plausible on its face.'"  Id.

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The individual Defendants, Horner and Howard, sought dismissal of Butler's

First Amendment claim, asserting they were each entitled to qualified immunity.  To

---

[3] Butler also alleged a state-law claim against the County Board of Commissioners
under Colorado's Lawful Off-Duty Conduct Act, Colo. Rev. Stat. § 24-34-402.5.
After dismissing Butler's § 1983 claim, the district court declined to exercise
supplemental jurisdiction over this state-law claim and dismissed it without
prejudice.  Butler does not challenge that ruling on appeal.

overcome Defendants' qualified-immunity defense, Butler had to allege that (1) the individual Defendants violated Butler's constitutional rights, and that (2) those rights were clearly established at the time of the alleged violation.  See Pearson v. Callahan, 555 U.S. 223, 232 (2009); Doe v. Woodward, 912 F.3d 1278 (10th Cir. 2019).  A court can consider these two inquiries in any order.  See Pearson, 555 U.S. at 236.  In this case, the district court granted Defendants' motion to dismiss at the first qualified-immunity inquiry, holding Butler had failed to allege a First Amendment violation.

In reaching that decision, the district court applied the five-part Garcetti/Pickering analysis, which asks:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

Bailey v. Indep. Sch. Dist. No. 69, 896 F.3d 1176, 1181 (10th Cir. 2018); see also Lane v. Franks, 573 U.S. 228, 236-37 (2014).  "In general, the first three prongs are legal issues to be decided by the court and the last two prongs are factual issues left to the factfinder."  Bailey, 896 F.3d at 1181.

In this case, Defendants conceded the first Garcetti/Pickering inquiry, that Butler testified as a private citizen, but moved to dismiss arguing that Butler had failed to allege adequate facts to succeed on either the second or third

6

Garcetti/Pickering inquiry.  The district court granted the motion to dismiss, ruling at the second Garcetti/Pickering step that Butler had failed to allege that his testimony was on a matter of public concern.

"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."  Lane, 573 U.S. at 241 (internal quotation marks omitted); see also Bailey, 896 F.3d at 1181 ("Matters of public concern are issues of interest to the community, whether for social, political, or other reasons."  (internal quotation marks omitted)).  For example, "[s]tatements revealing official impropriety usually involve matters of public concern."  Trant v. Oklahoma, 754 F.3d 1158, 1165 (10th Cir. 2014) (internal quotation marks omitted); see also Eisenhour v. Weber Cty., 744 F.3d 1220, 1228 (10th Cir. 2014) ("Speech involves a public concern when the speaker intends to bring to light actual or potential wrongdoing or breach of public trust by a public official or to disclose any evidence of corruption, impropriety, or other malfeasance within a governmental entity." (internal quotation marks, alterations omitted)).  Speech aimed at "air[ing] grievances of a purely personal nature" is generally not on a matter of public concern.  Lighton v. Univ. of Utah, 209 F.3d 1213, 1225 (10th Cir. 2000); see also Morris v. City of Colo. Springs, 666 F.3d 654, 661 (10th Cir. 2012) ("Speech relating to internal personnel disputes and working conditions ordinarily" does not "address[ ] matters of public concern." (internal quotation marks, alteration omitted)).  "Courts construe 'public concern'

very narrowly." <u>Leverington v. City of Colo. Springs</u>, 643 F.3d 719, 727 (10th Cir. 2011) (internal quotation marks omitted).

The <u>Garcetti</u>/<u>Pickering</u> analysis limits the First Amendment protection of a government employee's speech to speech on matters of public concern—"the core value of the Free Speech Clause of the First Amendment," <u>Pickering</u>, 391 U.S. at 573—in order "to ensure that citizens are not deprived of fundamental rights by virtue of working for the government." <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983). This is not to suggest that the First Amendment only protects speech on matters of public concern. <u>See</u> <u>id.</u> But in the context of public employment,

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

<u>Id.</u> "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." <u>Id.</u> at 146. "Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable." <u>Id.</u>; <u>see also</u> <u>Garcetti</u>, 547 U.S. at 418 (stating that if public employee did not speak as a citizen on a matter of public concern, "the

employee has no First Amendment cause of action based on his or her employer's reaction to the speech").

On appeal, Butler asserts two reasons why the district court erred in concluding that his testimony was not on a matter of public concern. First, he argues that any sworn testimony given by a public employee should per se always be a matter of public concern. Secondly, he contends that even if we do not adopt a per se rule, in this case his testimony was, in fact, on a matter of public concern, based on the state's general interest in child welfare and fair custody proceedings. We are not persuaded by either argument.

**A. We reject Butler's argument that any sworn testimony given by a public employee is per se always a matter of public concern**

Butler first argues for a sweeping per se evidentiary rule that would treat any sworn testimony given by a public employee in a judicial proceeding as always a matter of public concern. We reject such a per se rule because the Supreme Court has, instead, mandated a case-by-case approach, directing us to consider the <u>content</u>, <u>form</u> and <u>context</u> of the testimony in light of the record as a whole in a particular case.

### 1. The Supreme Court's mandate

The Supreme Court has directed courts, "[i]n assessing whether speech pertains to a matter of public concern," to "consider 'the content, form, and context of a given statement, as revealed by the whole record.'" <u>Bailey</u>, 896 F.3d at 1181 (quoting <u>Connick</u>, 461 U.S. at 147-48). We employ this case-by-case approach in

9

determining whether any other kind of public-employee speech is on a matter of public concern.  See id.; Nixon v. City & Cty. of Denver, 784 F.3d 1364, 1367-69 (10th Cir. 2015).

Specifically as to a government employee's speech in the form of sworn testimony given in a court proceeding, the Supreme Court itself applied Connick's case-by-case approach in Lane v. Franks, 573 U.S. 228 (2014), to decide whether a public employee's truthful sworn testimony was on a matter of public concern.  The overall question presented in Lane was whether the plaintiff, Edward Lane, a public official at a community college, was fired for testifying truthfully in criminal proceedings against a former employee—a state representative—who Lane had fired for collecting her paycheck but never coming to work.  Id. at 231-34.  In deciding whether Lane's testimony was a matter of public concern, the Court examined the content, form and context of the particular testimony that Lane gave, concluding:

> [t]he content of Lane's testimony—corruption in a public program and misuse of public funds—obviously involves a matter of significant public concern.  See, e.g., Garcetti, 547 U.S., at 425 . . . ("Exposing governmental inefficiency and misconduct is a matter of considerable significance"). And the form and context of the speech—sworn testimony in a judicial proceeding—fortify that conclusion. "Unlike speech in other contexts, testimony under oath has the formality and gravity necessary to remind the witness that his or her statements will be the basis for official governmental action, action that often affects the rights and liberties of others." United States v. Alvarez, 567 U.S. [709, 721], . . . (2012) (plurality opinion).

Lane, 573 U.S. at 241.

In Lane, then, the Supreme Court applied the case-specific analysis that the Court previously set forth in Connick, considering the content, form and context of a

public-employee's speech in order to decide whether Lane's sworn testimony in that case was on a matter of public concern.  Although Lane, in considering the form and context of the government employee's speech, held that sworn testimony in a judicial proceeding "fortifies" a matter-of-public-concern finding, the Court did not declare that sworn testimony in a judicial proceeding is per se a matter of public concern. See Helget v. City of Hays, 844 F.3d 1216, 1228 (10th Cir. 2017) (Tymkovich, C.J., concurring).  To the contrary, Lane addressed all the underlying facts, including the particular subject matter of the testimony at issue in determining whether the public employee could maintain a cause of action against his public employer for firing him. We do not doubt that often a government employee's court testimony, even though given as a private citizen, will involve matters of public concern.  Even so, Lane indicates that we must consider the content of that testimony before determining whether it is, in a given case, on a matter of public concern.  Lane establishes that, while the fact that the speech at issue is sworn testimony given in a judicial proceeding is a factor to consider, that fact is not alone dispositive and, thus, a per se rule to that effect is inappropriate.

Following Lane's analytical framework leads us to familiar territory. Applying Connick's case-by-case consideration of the content, form, and context is how we usually decide whether other types of government-employee speech address a matter of public concern.  For example, in Bailey, this court had to determine whether "a letter written by a public employee, seeking a reduced sentence for his relative," was "speech on a matter of public concern."  896 F.3d at 1179.  In making

that determination, we "consider[ed] 'the content, form, and context of a given statement, as revealed by the whole record.'" Id. at 1181 (quoting Connick, 461 U.S. at 147-48); see also Nixon, 784 F.3d at 1367-69 (considering these same factors in determining whether statements a police officer made were on a matter of public concern).

### 2. The circuit split that developed prior to Lane

Butler points out that, prior to Lane, the Fifth and Third Circuits adopted a per se rule treating any truthful sworn testimony given by a government employee as always a matter of public concern. See Johnston v. Harris Cty. Flood Control Dist., 869 F.2d 1565, 1578 (5th Cir. 1989) (holding, in case addressing government employee's testimony before "County Commissioner's Court" in support of fellow employee's EEOC complaint, that "[w]hen an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern"); see also Latessa v. N.J. Racing Comm'n, 113 F.3d 1313, 1319 (3d Cir. 1997) (stating Third Circuit has held "that a public employee's truthful testimony before a government adjudicating or fact-finding body, whether pursuant to subpoena or not, is a matter of public interest" (citing Green v. Philadelphia Housing Auth., 105 F.3d 882, 887 (3d Cir. 1997)).[4]  These two circuits reasoned:

---

[4] After Lane, the Fifth Circuit reaffirmed its per se rule in an unpublished decision. See Lumpkin v. Aransis Cty., 712 F. App'x 350, 358 (5th Cir. 2017) (unpublished) (stating that Lane did "not 'unequivocally abrogate[]'" that circuit's Johnston line of cases holding that a public employee's sworn testimony is per se a matter of public concern).  In light of that, and because Lane did not expressly consider the possibility of a per se rule, we go ahead and address the Third and Fifth Circuits' per se rule,

As a general rule, when a public employee speaks about matters that are of personal interest only, the speech does not address matters of public concern. Connick, 461 U.S. at 147 . . . . Under certain circumstances, however, the context in which the employee speaks may be sufficient to elevate the speech to the level of public concern. . . .

When an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern. Our judicial system is designed to resolve disputes, to right wrongs. We encourage uninhibited testimony, under penalty of perjury, in an attempt to arrive at the truth. We would compromise the integrity of the judicial process if we tolerated state retaliation for testimony that is damaging to the state. If employers were free to retaliate against employees who provide truthful, but damaging, testimony about their employers, they would force the employees to make a difficult choice. Employees either could testify truthfully and lose their jobs or could lie to the tribunal and protect their job security. . . . Thus, a grand jury witness speaks on matters of public concern when he furnishes truthful information to the grand jury on a matter that the grand jury properly is investigating. Likewise, when one state employee testifies in another employee's civil action against their mutual state employer, the witness's testimony constitutes a matter of public concern for First Amendment purposes. The goal of grand jury proceedings, of criminal trials, and of civil trials is to resolve a dispute by gathering the facts and arriving at the truth, a goal sufficiently important to render testimony given in these contexts speech "of public concern."

Johnston, 869 F.2d at 1577-78 (citations, internal quotation marks omitted); see also

Green, 105 F.3d at 886-87.

Although Johnston's examples include circumstances that would frequently

involve testimony relating to matters of public concern even without a per se rule—

testimony about government employers or matters being investigated by a grand

jury—these circuits have also applied this per se rule to testimony that is less

---

even though we have already concluded that the Supreme Court's cases, Connick and Lane, are dispositive here.

obviously about matters of public concern.  For example, the Third Circuit applied its
per se rule to hold that a government employee called by her boss's wife to testify as
a character witness for the wife in a divorce proceeding was engaged in speech of a
public concern, even though she was called to testify in "a purely private matter."
Pro v. Donatucci, 81 F.3d 1283, 1285, 1287-91 (3d Cir. 1996) (relying on Fifth
Circuit cases).

In adopting a per se rule, the Third and Fifth Circuits focus on the form (sworn
testimony) and context (speech before a government adjudicatory or fact-finding
body) of the government employee's speech, to the exclusion of its content,
concluding that "the context of a courtroom appearance raises speech to a level of
public concern, regardless of its content," Green, 105 F.3d at 887.  But such an
approach contradicts the Supreme Court's directive in Connick that we consider all
three factors—content, form and context—before deciding, on a case-by-case basis,
whether a government employee's speech in a given case is on a matter of public
concern.

In light of that, other circuits, even before Lane, declined to adopt a per se rule
that always treats a government employee's truthful sworn testimony as a matter of
public concern.  The Seventh Circuit explained:

> Drawing on Fifth Circuit cases, [Plaintiff] suggests that we ought to
> conclude that an employee who testifies before an official government
> adjudicatory or fact-finding body speaks in a context that is inherently of
> public concern. See Johnston v. Harris County Flood Control Dist., 869
> F.2d 1565, 1578 (5th Cir.1989) (citations omitted). Although we share
> our colleagues' concern for the integrity of the judicial process, our cases
> have rejected a blanket rule according absolute First Amendment

> protection to communications made in the course of a lawsuit. Such a rule would contravene both the rationale of [Supreme Court] cases like <u>Connick</u> and <u>Pickering</u> that public employee speech is protected against employer retaliation only if it addresses matters of public concern and the premise of <u>McDonald v. Smith</u>, 472 U.S. 479, 484–85 . . . (1985), that there is no sound basis for granting greater constitutional protection to statements made under the Petition Clause than to other run-of-the-mill speech or expression. In short, airing private gripes in the form of a complaint or testimony cannot alter their status as private gripes.

<u>Wright v. Ill. Dep't of Children & Family Servs.</u>, 40 F.3d 1492, 1505 (7th Cir. 1994) (citations omitted); <u>see</u> <u>Padilla v. S. Harrison R-II Sch. Dist.</u>, 181 F.3d 992, 996-97 (8th Cir. 1999) (declining to apply the Fifth Circuit's per se rule; holding teacher's testimony about propriety of a hypothetical sexual relationship between a teacher and a student was not a matter of public concern); <u>see also</u> <u>Maggio v. Sipple</u>, 211 F.3d 1346, 1351-54 (11th Cir. 2000) (considering form of speech (testimony during non-public grievance hearing), and its context and content (testimony given in support of supervisor's "private grievance," which did not involve government fraud or corruption), in determining that plaintiff's testimony was not on a matter of public concern); <u>Arvinger v. Mayor & City Council</u>, 862 F.2d 75, 76-79 (4th Cir. 1988) (reversing district court's decision that plaintiff's statement "during a coworker's fair employment hearing that he did not know whether . . . marijuana found in his van belonged to [his] coworker" was a matter of public concern because in reaching that conclusion, district court "improperly elevated context over content").

These conflicting pre-<u>Lane</u> authorities bolster our decision to reject a per se rule that would treat all public employees' sworn testimony as always a matter of public concern.  First and foremost, such a rule contradicts the Supreme Court's

mandate, set forth in <u>Connick</u> and applied in <u>Lane</u>, that we decide whether speech is on a matter of public concern on a case-by-case basis, considering the content, form and context of the speech in a given case, on the record as a whole.  In addition, although we, like the Seventh Circuit, share the Fifth and Third Circuits' concern for maintaining the integrity of the truth-seeking functions of courts, protecting the integrity of judicial proceedings is not the purpose of the <u>Garcetti</u>/<u>Pickering</u> analysis. That analysis, instead, determines when the First Amendment protects a public employee's speech, as well as the public's interest in having well-informed views of public employees contribute to our civic discourse.  <u>See</u> <u>Garcetti</u>, 547 U.S. at 419. There are any number of other ways that courts protect the integrity of their truth-seeking function, including subpoena and contempt powers, cross-examination, and criminal sanctions for perjury, without expanding the essential task of <u>Garcetti</u>/<u>Pickering</u>.

Giving sworn testimony publicly in court often has consequences, even for non-public employees.  Witnesses to crimes, witnesses to domestic abuse, witnesses to serious torts or business fraud all can encounter serious repercussions because of their testimony.  We, and our nation, salute the courage of such witnesses and recognize that our system of justice depends on such witnesses of courage and integrity.  Society seeks to protect such witnesses in a variety of ways, and for public employees testifying as citizens about a matter of public concern, <u>Garcetti</u>/<u>Pickering</u> affords such witnesses significant First Amendment protection when their interest in speaking outweighs their government employer's interest in an efficient workplace.

16

But we cannot, nor do we see the need to, apply that First Amendment protection using per se rules that contradict the Supreme Court's mandate in <u>Connick</u> and <u>Lane</u>.

### 3. The Tenth Circuit did not adopt a per se rule prior to <u>Lane</u>

For the first time on appeal, Butler contends that this court has already joined the Fifth and Third Circuits in adopting a per se rule treating all sworn testimony by a government employee as a matter of public concern.[5] But it would be quite extraordinary for this court to adopt a per se rule that directly contradicts the Supreme Court's mandate in <u>Connick</u> and <u>Lane</u> for a case-by-case analysis. In fact, each of the Tenth Circuit cases on which Butler relies was decided before <u>Lane</u> and none expressed or adopted a per se rule. So, Butler cannot point to any Tenth Circuit case, even before <u>Lane</u>, expressly adopting the per se rule for which he now advocates.

Instead, Butler relies on language in some of our earlier case law which he misconstrues to suggest a per se rule. Butler specifically points to <u>Melton v. City of Oklahoma City</u>, 879 F.2d 706, 711-12 (10th Cir. 1989), <u>overruled en banc on other grounds by</u>, 928 F.2d 920, 922 (10th Cir. 1991), <u>Langley v. Adams County</u>, 987 F.2d 1473, 1479 (10th Cir. 1993), <u>Worrell v. Henry</u>, 219 F.3d 1197 (10th Cir. 2000), and

---

[5] While usually "we will not consider issues raised for the first time on appeal," here Butler has "simply offer[ed] new legal authority for the position he advanced before the district court." <u>Schulenberg v. BNSF Ry. Co.</u>, 911 F.3d 1276, 1286 n.4 (10th Cir. 2018) (alterations, internal quotation marks omitted); <u>cf. First W. Capital Mgmt. Co. v. Malamed</u>, 874 F.3d 1136, 1145 (10th Cir. 2017) (noting this court has discretion "to determine an issue raised for the first time on appeal if it is a pure matter of law and its proper resolution is certain" (internal quotation marks omitted)).

Lytle v. City of Haysville, 138 F.3d 857, 864 n.2 (10th Cir. 1998).[6] All of the language from these cases on which Butler relies is to the same effect: "The First Amendment protects the right to testify truthfully at trial," Melton, 879 F.2d at 714; see also Langley 987 F.2d at 1479 (stating in dicta that "[t]he 'First Amendment protects the right to testify truthfully at trial'" (quoting Melton, 879 F.2d at 714)); Worrell, 219 F.3d at 1204-05 (stating generally in dicta that "[i]n the last few decades, federal courts have afforded additional protection to witnesses who are employed by the government, concluding that truthful testimony is protected by the First Amendment and that a government employee may not be fired or subjected to other adverse action as a result of such testimony" (citing Melton, 879 F.2d at 714)); Lytle, 138 F.3d at 864 n.2 (stating in dicta that "[t]his circuit has concluded that a witness's sworn testimony in a court proceeding is entitled to heightened protection under the First Amendment" (citing Melton, 879 F.2d at 714)).

These general statements on which Butler relies are unremarkable. Of course the First Amendment protects sworn testimony as speech. But that protection, like most constitutional protections, is not absolute. See Virginia v. Black, 538 U.S. 343, 358 (2003) (stating that "[t]he protections afforded by the First Amendment . . .are not absolute"); see also W. Coast Hotel Co. v. Parrish, 300 U.S. 379, 391 (1937) (stating that, while Fourteenth Amendment prohibits deprivation of liberty without

---

[6] Butler also relies on Gilchrist v. Citty, 71 F. App'x 1, 4 (10th Cir. 2003) (unpublished), but, as an unpublished decision, Gilchrist is not binding on our panel. See United States v. Johnson, 911 F.3d 1062, 1071 (10th Cir. 2018) (citing Tenth Cir. R. 32.1(A)).

due process, it "does not recognize an absolute and uncontrollable liberty"); United States v. Cox, 906 F.3d 1170, 1184 (10th Cir. 2018) (noting Second Amendment "right to keep and carry arms, like other constitutional guaranties, has limits").  The whole point of the Garcetti/Pickering balancing test is to determine when and how the First Amendment protects a public employee's speech.  See Worrell, 219 F.3d at 1205 (stating, in applying Pickering balancing test, that "First Amendment protection of public employees' testimony is not absolute").  The problem with deeming constitutional protections to be absolute and without exception is determining what happens when one absolute protection conflicts with another absolute constitutional guarantee.  Such a potential conflict between absolutes counsels against adopting a blanket, per se constitutional protection and similarly, counsels against adopting a per se rule here in applying the Garcetti/Pickering analysis to decide when the First Amendment protects a government employee's speech.

Interpreting the general language Butler cites from our earlier, pre-Lane cases in such an absolute way is, any event, contrary to the actual analyses this court applied in those cases.  In Melton, for example, this court in fact applied a case-by-case analysis, considering the content, form and context of the testimony at issue, just as Connick required, before concluding that the testimony at issue there was on a matter of public concern.  See 879 F.2d at 713-14.  It was not until Melton turned to the next step in the Supreme Court's Pickering analysis, balancing the employee's free speech interest with the government employer's interest in an efficient

workplace, that this court used the general language about the First Amendment's protection of sworn testimony.  See Melton, 879 F.2d at 713-14.

In our other published cases that followed Melton, we used similar general language indicating that the First Amendment protects testimony only in dicta; in those cases, this court did not need to address whether the testimony at issue was on a matter of public concern because the parties agreed that it was.  See Worrell, 219 F.3d at 1204-06[7]; Lytle, 138 F.3d at 864 n.2; Langley, 987 F.2d at 1479.

All of these cases, in any event, came before Lane, and none addressed whether to adopt a per se rule treating all truthful sworn testimony given by a government employee in court as always a matter of public concern.  Moreover, later Tenth Circuit cases recognize that this court has never expressly considered whether to adopt a per se rule treating all testimony by government employees as a matter of public concern.  See Deutsch v. Jordan, 618 F.3d 1093, 1099 n.1 (10th Cir. 2010) (recognizing circuit split, indicating "[t]his circuit's precedents have not explicitly

---

[7] Butler contends that, while this portion of Worrell might be dicta, later portions of Worrell that also relied upon the statement that testifying truthfully is protected by the First Amendment were not dicta.  But those later portions of Worrell addressed a different question, whether government defendants that were not Worrell's employer violated his First Amendment rights.  219 F.3d at 1209-12.  As to those claims against non-employers, Worrell had to show that (1) he engaged in activity protected by the First Amendment, (2) the defendants' actions injured Worrell, and (3) the defendants' actions were substantially motivated by Worrell's protected activity.  Id. at 1212-13.  It was in that context, in addressing whether Worrell had engaged in protected activity, that Worrell stated that it is clearly established that testifying truthfully is an activity protected by the First Amendment.  Id. at 1213, 1215.  In that analysis, it was unnecessary for us to decide whether Worrell's testimony was on a matter of public concern.  And it bears repeating that the First Amendment protection of sworn testimony is not absolute.

adopted a per se rule," and declining to address the question in that case); see also

Helget, 844 F.3d at 1229 (Tymkovich, C.J., concurring) (noting, after Lane, that

neither the Supreme Court nor the Tenth Circuit has adopted a per se rule treating all

testimony by a government employee as a matter of public concern).

### 4. In conclusion: We reject Butler's argument for a per se rule and instead apply the case-by-case approach the Supreme Court mandated in Connick and applied in Lane

We, therefore, decline to adopt the per se rule that Butler seeks, which would

automatically treat all truthful sworn testimony by government employees as always

a matter of public concern, regardless of its content.  Instead, following the Supreme

Court's mandate in Connick, as applied in Lane and a majority of other circuits, we

consider on a case-by-case basis the content, form, and context of a government

employee's testimony at issue in a given case in order to determine whether it

involves a matter of public concern.

## B. Applying such a case-by-case approach here, Butler failed to allege that his testimony during the child custody hearing involved a matter of public concern

Butler's second argument is that, even if we decline to adopt a per se rule for

sworn testimony, as we have, his testimony at the child custody proceeding in this

particular case was in fact on a matter of public concern.  Considering the content,

form, and context of that testimony, we disagree.

In considering the content, form, and context of a government employee's

speech in prior cases, we have noted that we "may consider the motive of the

speaker, and whether the speech merely deals with personal disputes and grievances

unrelated to the public's interests." Bailey, 896 F.3d at 1181 (internal quotation marks omitted). "[S]peech that exposes official impropriety generally involves matters of public concern, while speech that simply airs grievances of a purely personal nature typically does not." Nixon, 784 F.3d at 1367-68 (internal quotation marks omitted).

Like the Supreme Court in Lane, we conclude in this case that the form and context of Butler's speech—sworn testimony in a court proceeding—weigh in favor of treating it as a matter of public concern. See Lane, 573 U.S. at 2380 (stating that "the form and context of the speech" at issue there—"sworn testimony in a judicial proceeding—fortify" the conclusion that Lane's testimony about "corruption in a public program and misuse of state funds" was a matter of public concern).

However, as for the content of the speech, the complaint does not tell us much about Butler's testimony. We know that he was testifying as a character witness for his sister-in-law in a child custody proceeding, which is a purely personal dispute that certainly has great significance for the parties involved but is ordinarily not of general interest to the community as a whole. We know Butler testified, among other things, as to the County Road and Bridge department's hours of operation, although we do not know what he said in this regard.[8] This general topic, however, seems quite uncontroversial; the hours of operation of the County Road and Bridge Department is surely a matter of public knowledge and appears to be a non-

_____

[8] Butler has never asserted that he could adequately plead that his testimony was on a matter of public concern by amending his complaint.

22

controversial fact. While this testimony may have been relevant to the custody determination (particularly the availability of one of the parties to discharge parenting duties to the child involved) it does not bring this testimony on an otherwise personal dispute into the realm of public concern. It does not, for example, touch on any matter involving impropriety or malfeasance of government officials. It appears, instead, that Butler's motive for testifying was personal—to support his sister-in-law and attest to her character in a custody dispute. See Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988) (per curiam) (considering motive of speaker, "i.e., whether the speech was calculated to disclose misconduct or dealt with only personal disputes or grievances with no relevance to the public interests").

Butler asserts that his testimony at a child custody proceeding was a matter of public concern in light of the State of Colorado's concern for the welfare of children and the fair resolution of child custody matters. We accept that Colorado has a general interest in these matters. But "[i]t is not sufficient that the topic of the speech be of general interest to the public; in addition, what is *actually said* must meet the public concern threshold." Nixon, 784 F.3d at 1368 (internal quotation marks omitted). "A statement does not attain the status of public concern simply because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." Leverington, 643 F.3d at 727. Here, Butler testified in support of his sister-in-law during a personal dispute with her ex-husband over the custody of their child, regarding both the sister-in-law's character and the hours of operation for the County's Road and Bridge

Department.  There is no indication that this testimony was of interest or concern to the community at large.

Contrast Butler's testimony with the testimony at issue in the Seventh Circuit's decision in Wright, 40 F.3d at 1505-06, a case on which Butler relies.  Wright held that the specific government-employee testimony at issue in that case, given in a child custody proceeding, was speech on a matter of public concern.  40 F.3d at 1502, 1505.  But Wright did not hold, as Butler appears to assert, that any testimony given in any child custody hearing is a matter of public concern.  Instead, Wright held that a social worker's report and testimony regarding "her version of the procedural and substantive shortcomings of the Department's official investigation of the case" was a matter of public concern as it pertained to "the State's methods of investigating an allegation of child abuse," as it addresses serious systemic deficiencies in the operation of a public department.  Id.  That testimony is much different than Butler's testimony here, speaking to the character of his sister-in-law and stating the hours of operation of the County's Road and Bridge Department.  After considering the content, form, and context of Butler's testimony at issue here, we agree with the district court that it was not on a matter of public concern.

### III. CONCLUSION

For the foregoing reasons, then, we decline to adopt a per se rule that all truthful testimony given by a government employee is always a matter of public concern.  We instead apply the case-by-case approach mandated by the Supreme Court, considering the content, form, and context of the specific testimony by a

24

government employee at issue in a given case.  Applying that approach here, we
conclude Butler's specific testimony as a character witness for his sister-in-law
during a child custody hearing was not a matter of public concern.  Therefore, we
AFFIRM the district court's dismissal of Butler's § 1983 claims against the two
individual defendants, Horner and Howard.

18-1012, <u>Butler v. Board of County Commissioners</u>

**LUCERO**, J., dissenting.

I respectfully dissent.

Shortly after his promotion to a position as District Supervisor for the San Miguel County Road and Bridge Department, Jerud Butler was demoted for providing truthful testimony in a judicial proceeding. He had testified as a character witness in a child custody matter, and answered truthfully a question about the Department's hours of operation. The proceedings involved a child of his sister-in-law and her ex-husband, a fellow employee of the Department. Had Butler not testified willingly, he would have been compelled to do so through subpoena. Butler testified in his personal capacity and on his own time. For having thus testified, Butler was demoted and reprimanded in writing.

My respected colleagues conclude that the First Amendment does not protect Butler's testimony because his speech did not raise a matter of public concern. They incorrectly interpret <u>Lane v. Franks</u>, 573 U.S. 228 (2014), to hold that a supervisor does not violate an employee's First Amendment rights by retaliating against that employee for providing truthful testimony in a child custody proceeding. Neither <u>Lane</u> nor any other case the majority cites carries that muddy water. Accordingly, I do not join the majority's application of the "content, form, and context" analysis required by <u>Lane</u> and cases that precede it. <u>See</u> <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983).

My colleagues recognize the form and context of Butler's speech in a judicial proceeding "weigh in favor of treating it as a matter of public concern," (Majority Op.

22), yet proceed to engage in a myopic analysis of the content alone to declare the speech was not a matter of public concern.  This exclusive focus on content violates the very Supreme Court mandate the majority claims to honor in rejecting a per se rule.  See Snyder v. Phelps, 562 U.S. 443, 454 (2011) ("In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said.").

It is difficult for me to accept the proposition that society's concern in the custody of a child can be as personal as the majority pronounces.  To be sure, participants in the proceeding may have personal concerns regarding the custody of a child, but the overarching public interest in the well-being of children cannot be so easily ignored.  "Merely because speech concerns an issue of personal importance does not preclude its treatment as a public matter."  Bailey v. Indep. Sch. Dist. No. 69, 896 F.3d 1176, 1182 (10th Cir. 2018).  Although the custody of a child is partly personal in nature, it is at its root a societal and public issue.

I would hold that Butler's testimony was on a matter of public concern.  Further, I would hold that Butler's First Amendment right to testify in a child custody proceeding without suffering employer retaliation was clearly established.  Lane explained that "the form and context of . . . speech—sworn testimony in a judicial proceeding—fortify th[e] conclusion" that such speech is a matter of public concern.  573 U.S. at 236-37.  Moreover, the Colorado General Assembly's pronouncements on the importance of child welfare in divorce proceedings render obvious the fact that child custody disputes are matters of public concern.

2

# I

"Matters of public concern are issues of interest to the community, whether for social, political, or other reasons." Bailey, 896 F.3d at 1181 (quotation omitted). "The inquiry turns on the content, form, and context of the speech." Lane, 573 U.S. at 241 (quotation omitted). As noted above, "no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech." Snyder, 562 U.S. at 454.

There can be no question that the form and context of in-court testimony establish a significant presumption that the speech raises matters of public concern. As explained by the Supreme Court in Lane, the form and context of "sworn testimony in a judicial proceeding" should "fortify th[e] conclusion" that it involves "a matter of significant public concern." Id. at 236-37. "Unlike speech in other contexts, testimony under oath has the formality and gravity necessary to remind the witness that his or her statements will be the basis for official governmental action, action that often affects the rights and liberties of others." Id. (quotation omitted). Not unlike sentencing hearings, which we have held invoke matters of public concern, child custody proceedings "are funded by the public, and take place, at least theoretically, within the public eye as matters of public record." Bailey, 896 F.3d at 1181.

Integrity of our judicial process depends upon witnesses' willingness to provide truthful testimony. I would be far more reluctant than my colleagues to hold that this case presents an exceedingly rare instance in which testimony in judicial proceedings does not raise a matter of public concern. A fundamental tenet of due process is the right to call, confront, and cross examine witnesses. See Green v. Phila. Hous. Auth., 105

3

F.3d 882, 887 (3d Cir. 1997) ("The utility of uninhibited testimony and the integrity of the judicial process would be damaged if we were to permit unchecked retaliation for appearance and truthful testimony at such proceedings.").  As the Fifth Circuit explained, "[t]he goal of grand jury proceedings, of criminal trials, and of civil trials is to resolve a dispute by gathering the facts and arriving at the truth, a goal sufficiently important to render testimony given in these contexts speech of public concern."  Johnston v. Harris Cty. Flood Control Dist., 869 F.2d 1565, 1578 (5th Cir. 1989) (quotation omitted).  And the majority cannot seriously dispute that the threat of employer retaliation undermines a witness' willingness to testify, strengthening the presumption that we treat such speech as raising a matter of public concern.[1]

The majority does not cite a single case from this circuit in which sworn testimony in judicial proceedings is so personal in nature as to overwhelm the strong presumption, created by both the form and context of the speech, towards treating such speech as involving matters of public concern.  See Bailey, 896 F.3d at 1181-82 (holding character letters submitted in a sentencing proceeding implicated public concerns); Deutsch v. Jordan, 618 F.3d 1093, 1100 (10th Cir. 2010) (holding testimony responding to a charge of public corruption was a matter of public concern); Worrell v. Henry, 219 F.3d 1197, 1206 (10th Cir. 2000) (holding testimony of an investigator in a criminal trial as a paid

---

[1] The majority states that courts may "protect the integrity of their truth-seeking function" in other ways, "including subpoena and contempt powers, cross-examination, and criminal sanctions for perjury."  (Majority Op. 16.)  But Butler in this case testified under the threat of a later subpoena.  And the threat of criminal sanctions for perjury, like hypothetical cross-examination, would not encourage reluctant witnesses threatened with the loss of their livelihood to testify.

expert raised a matter of public concern).  Nor does it identify any Supreme Court cases

so holding.  See Lane, 573 U.S. at 241 (holding testimony in criminal proceedings

regarding public corruption raised a matter of public concern).

## II

To conclude that Butler's speech as a character witness in a child custody

proceeding—an issue that plainly implicates the social fabric of a community—is so

personal or private in content that the speech does not raise a matter of public concern

requires a leap I am unwilling to make.  Butler's speech implicated a child's welfare, and

I repeat, a child's welfare is a matter of interest to the community.  Colorado has

unequivocally declared the placement of children a matter of public concern:  "The

general assembly hereby finds and declares that the stability and preservation of the

families of this state and the safety and protection of children are matters of statewide

concern."  Colo. Rev. Stat. § 19-3-100.5(1).

Unlike purely private matters that may generally be settled at will by the parties,

Colorado has directed courts to make an independent examination of the best interests of

the child in custody matters.  Compare Colo. Rev. Stat. § 14-10-112(2) (permitting

enforcement of conscionable separation agreements, but excepting "the allocation of

parental responsibilities"), with Colo. Rev. Stat. § 14-10-124(1.5) (requiring courts to

"determine the allocation of parental responsibilities . . . in accordance with the best

interests of the child giving paramount consideration to the child's safety and the

physical, mental, and emotional conditions and needs").  Colorado courts have thus held

that the state has a "public interest" in "determining what is in the best interest of the

parties and their children in a dissolution of marriage action." In re Marriage of Finer, 893 P.2d 1381, 1388 (Colo. App. 1995).  Similarly, they have explained that child support determinations "are not purely private determinations, but serve a public function." Stillman v. State, 87 P.3d 200, 201 (Colo. App. 2003).

The Colorado Supreme Court has also recognized the doctrine of parens patriae, in which the state asserts an interest in the protection of children who cannot care for themselves. E.P. v. Dist. Court, 696 P.2d 254, 258 (Colo. 1985) ("The state as parens patriae has a continuing responsibility to provide for the protection of children within its borders."); see also Gomes v. Wood, 451 F.3d 1122, 1128 (10th Cir. 2006) ("States have a parens patriae interest in preserving and promoting children's welfare.").  In light of these explicitly declared public interests, child custody proceedings cannot be treated as wholly private affairs.

My colleagues fail to appreciate these interests in assessing the facts before us. Butler's speech may not be so easily dismissed as arising from purely private motivation. See Bailey, 896 F.3d at 1182 ("Merely because speech concerns an issue of personal importance does not preclude its treatment as a public matter."); Deutsch, 618 F.3d at 1100 ("[T]he speaker's having a highly personal motive for a disclosure does not necessarily mean that the speech is not a matter of public concern.").  As in Wright v. Illinois Dep't of Children & Family Servs., 40 F.3d 1492 (7th Cir. 1994), Butler was not speaking out of his own interest in obtaining child custody, but rather truthfully testified to assist the state judiciary in ensuring the welfare of the child whose custody was in

6

dispute.  Id. at 1505.  Butler's testimony as a character witness directly implicates the very heart of the public concern in determining the appropriate placement for the child.

Further, Butler's allegation that he would have been required to testify pursuant to a subpoena had he not done so willingly refutes the majority's assertion that "Butler's motive for testifying was personal."  (Majority Op. 23.)  As the Seventh Circuit has recognized, "surely an employee summoned to give sworn testimony in a judicial proceeding has a compelling interest in testifying truthfully and the government employer can have an offsetting interest in preventing her from doing so only in the rarest of cases."  Wright, 40 F.3d at 1505 (emphasis omitted).  The majority also emphasizes Butler's truthful answer on the hours of the Department's operations as constituting the entirety of his testimony.  (Majority Op. 22-23.)  But Butler does not argue that the fact that his testimony included the Department's hours of operation rendered the content of his speech public; instead he claims that the content of his testimony as a character witness in the child custody dispute is what makes his testimony public in nature.  Given the authorities cited above, that proposition should be uncontroversial.[2]

---

[2] Even though this matter is before us on a 12(b)(6) dismissal, the Department attempts to introduce its motive for demoting Butler by reference to its written reprimand. That letter tells us Butler was demoted for causing departmental disharmony because another employee of the department was a party to the child custody proceedings at issue. Even if we are to consider this extraneous claim, an employer's motive is not relevant to our public concern analysis, as my colleagues recognize.  (Majority Op. 4 n.2.)  Instead, the employer's motive may be relevant in deciding whether the employer's interest in maintaining workplace harmony is stronger than the speaker's interest in exercising their First Amendment rights.  See Bailey, 896 F.3d at 1181 (summarizing the third prong in Garcetti/Pickering as "whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech

7

## III

Finally, I would also hold that Butler's constitutional right to testify in child custody judicial proceedings without incurring employer retaliation was clearly established. Generally, "[f]or a right to be clearly established there must be Tenth Circuit or Supreme Court precedent close enough on point." Mascorro v. Billings, 656 F.3d 1198, 1208 (10th Cir. 2011). But "in an obvious case" more general "standards can clearly establish the answer, even without a body of relevant case law." Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (quotations omitted); see also White v. Pauly, 137 S. Ct. 548, 552 (2017) (reaffirming the "obvious case" rule). In the vernacular, if the constitutional violation is plain, it is unnecessary to resort to such granular detail as to require another case involving a "purple cow."[3]

Butler's claims present such an obvious case. Accordingly, the general standards articulated by the Supreme Court in Lane clearly establish Butler's First Amendment right to testify in a judicial proceeding free from employer retaliation. In Lane, the Court expressly held that speech proffered as testimony in a judicial proceeding "fortif[ies]" the conclusion that such speech raises a matter of public concern. 573 U.S. at 241. This Supreme Court pronouncement clearly establishes a strong presumption that truthful

---

interests"). The majority did not reach this prong of the Garcetti/Pickering test, although I do not consider that thin motive to overwhelm the speaker's constitutional interest.

[3] Courts in different jurisdictions have adopted various animal analogies to describe a case with nearly identical facts, including red cow, spotted dog, spotted horse, and white pony. See Corn v. City of Lauderdale Lakes, 997 F.2d 1369, 1390 n.2 (11th Cir. 1993).

testimony is not a purely private matter.  And in light of Colorado's explicit statements of policy that child custody presents a matter of public concern, <u>see</u> Part II, <u>supra</u>, it should be clear to any reasonable official that testimony in child custody proceedings does not overcome that presumption.