# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

Jerud Butler
      Plaintiff/Appellant

v.

Board of County Commissioners for
San Miguel County; Mike Horner, in
his individual capacity; and Kristl
Howard, in her individual capacity
      Defendants/Appellees

Case No. 18-1012

_____

On Appeal from the United States District Court for the District of Colorado
The Honorable Judge Wiley Y. Daniel
Case Number 17-cv-00577-WYD-GPG
_____

## APPELLANT'S PETITION FOR REHEARING EN BANC
_____

Nicholas W. Mayle, Esq.
Damon Davis, Esq.
Benjamin P. Meade, Esq.
Killian Davis Richter & Mayle, PC
202 North Seventh Street
Grand Junction, CO 81501
Telephone: (970) 241-0707
FAX: (970) 242-8375
E-mail: ben@killianlaw.com
Attorneys for Jerud Butler

The panel decision conflicts with previous decisions of the Tenth Circuit, specifically, *Worrell v. Henry*, 219 F.3d 1197, 1215–16 (10th Cir. 2000), and *Leverington v. City of Colorado Springs*, 643 F.3d 719, 733–34 (10th Cir. 2011). Consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions.

The panel decision also involves a question of exceptional importance, namely, whether a public employee's truthful trial testimony is per se speech on a matter of public concern. The panel's decision on this issue conflicted with authoritative decisions of other United States Courts of Appeals that have addressed the issue, including *Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1578 (5th Cir. 1989), and *Pro v. Donatucci*, 81 F.3d 1283, 1290 (3d Cir. 1996).

Finally, the panel decision involves another question of exceptional importance, namely, what the legal standard is for determining whether truthful trial testimony is speech on a matter of public concern. Judge Lucero, in his dissent, asserted that there is a strong presumption, overcome in only exceedingly rare instances, that truthful trial testimony is speech on a matter of public concern. Dissenting Opinion, p. 3. In contrast, the majority did not expressly recognize any such presumption. *See generally* Majority Opinion. The existence or nonexistence of such a presumption is a significant federal question that is likely to determine

the outcome of many future cases.

For these three reasons, this Court should grant this petition for rehearing en banc.

## I. The Majority Decision Conflicts with Previous Decisions of the Tenth Circuit, Namely, *Worrell* and *Leverington*

In *Worrell*, a former FBI agent testified in court for a criminal defendant, angering law enforcement officers, including Turner. 219 F.3d at 1201–02. Turner told the D.A. not to hire Worrell, and then the D.A. rescinded Worrell's job offer. *Id.* at 1202–03. Worrell brought section 1983 claims against Turner, the D.A., and other defendants, alleging that they violated his First Amendment rights. *Id.* at 1203.

Under these facts, the Tenth Circuit determined, for the first time, that for a governmental employee to bring a section 1983 claim against a non-employer defendant like Turner, the employee must prove the following elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Id.* at 1212.

Then, for the first time on appeal, the Tenth Circuit addressed Turner's

claim of qualified immunity.  *Id.* at 1214–16.  Under the doctrine of qualified

immunity, Turner would be shielded from liability for civil damages if his conduct

did not "violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Id.* at 1215 (quotations omitted).  Despite

this high standard, and despite the fact that the Tenth Circuit had never before

articulated the three-prong test for non-employer defendants, the *Worrell* Court

still held that the non-employer defendant, Turner, violated the former FBI agent's

clearly established First Amendment rights.  *Id.* at 1215–16.

When reaching this holding, the Tenth Circuit drew upon cases in which

employees had brought section 1983 claims against *employer* defendants (not non-

employer defendants), alleging violations of their First Amendment rights.  *Id.*

Specifically, the *Worrell* Court reasoned, "Decisions of this circuit have held that

the right to testify truthfully is clearly established."  *Id.* at 1215 (citing *Lytle v. City

of Haysville*, 138 F.3d 857, 864 n.2 (10th Cir. 1998); and *Langley v. Adams Cty.,

Colo.*, 987 F.2d 1473, 1479 (10th Cir. 1993)).  Thus, the *Worrell* Court held,

"Because the right to testify truthfully is clearly established, Mr. Turner is not

entitled to qualified immunity on this record."  *Id.* at 1216 (citing *Lytle*, 138 F.3d at

864 n.2; *Langley*, 987 F.2d at 1479; and *Melton v. City of Oklahoma City*, 879 F.2d

706, 714 (10th Cir. 1989)).

After *Worrell* was decided, another Tenth Circuit opinion held as follows: if

a governmental employee's speech is not on a matter of public concern, then it is not clearly established that the speech is constitutionally-protected activity under the first prong of the *Worrell* test for non-employer defendants. *See Leverington*, 643 F.3d at 733–34.

Specifically, in *Leverington*, a cardiac nurse told a police officer, during a less than cordial traffic stop, that she hoped she never had him as a patient. *Id.* at 722. The officer reported the statement to the nurse's employer, who fired her. *Id.* The nurse then brought section 1983 claims against the officer and her former employer, alleging that they violated her First Amendment rights. *Id.* Each defendant claimed qualified immunity. *Id.* at 722–23. Regarding her former employer, the Tenth Circuit concluded that the nurse's statement at the traffic stop was not speech on a matter of public concern. *Id.* 728.

Importantly, regarding the non-employer defendant (the police officer), the Tenth Circuit reasoned and held as follows:

> [I]n order to survive the first prong of *Worrell*['s test for non-employer defendants], [the nurse] would have to establish that the public-concern test does not apply to a free-speech retaliation claim under [the] *Worrell*[ test]. We have substantial doubt that this is the case. Whether an employer's adverse employment action is permissible depends on whether the employee's speech is on a matter of public concern—if not on a matter of public concern, we deem the employer's action to be permissible under the First Amendment. It would make little sense to punish third parties for "chilling" private speech that does not enjoy protection from the government employer. If the

4

> First Amendment does not protect [the nurse] against the
> consequences of her statement (termination by [her
> employer]), then it would be incongruous to nonetheless
> impute "liability" to [the police officer].
> . . . .
> However, we need not—and do not—decide here whether
> the public-concern test applies in the context of
> a *Worrell* inquiry. It is sufficient that the law was not
> clearly established on this point, and thus that [the police
> officer] is entitled to qualified immunity on this basis as
> well.

*Id.* at 733–34.

Taken together, these holdings in *Worrell* and *Leverington* dictate that in the
Tenth Circuit, truthful trial testimony is speech on a matter of public concern. The
logic is as follows:

- If speech is not on a matter of public concern, then it is not clearly
  established that the speech is a constitutionally-protected activity under the
  first prong the *Worrell* test. *Leverington*, 643 F.3d at 733–34.

- If speech is truthful trial testimony, then it is clearly established that the
  speech is a constitutionally-protected activity under the first prong of the
  *Worrell* test. *Worrell*, 219 F.3d at 1215–16.

- Therefore, if speech is truthful trial testimony, then the speech is on a matter
  of public concern. *See Leverington*, 643 F.3d at 733–34; *Worrell*, 219 F.3d
  at 1216.

Yet in the opinion at issue, the majority decided that truthful trial testimony

5

is not per se speech on a matter of public concern. Majority Opinion, pp. 9–21.

When doing so, the majority used a footnote to address the pertinent holding from

*Worrell*. Majority Opinion, p. 20, n.7. The majority attempted to distinguish that

holding on the ground that non-employer defendants are subject to a different test

from employer defendants. *Id.* The majority attempted to make this distinction

even though the appellees never argued for this distinction. And as described

above, the distinction is not sound when one considers the reasoning and holding

in *Leverington*, 643 F.3d at 733–34.

For these reasons, the majority decision conflicts with previous decisions of

the Tenth Circuit, specifically, *Worrell*, 219 F.3d at 1215–16, and *Leverington*, 643

F.3d at 733–34.

## II. The Majority's Decision Involves a Question of Exceptional Importance -- Whether a Public Employee's Truthful Trial Testimony is Per Se Speech on a Matter of Public Concern – and the Decision Conflicts with Decisions of Other Circuits

"Whether an employee's speech addresses a matter of public concern must

be determined by the content, form, and context of a given statement, as revealed

by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983).

Applying this legal standard, the Third and Fifth Circuits held, "When an

employee testifies before an official government adjudicatory or fact-finding body

he speaks in a context that is inherently of public concern." *Johnston*, 869 F.2d at 1578, *quoted and followed in Pro*, 81 F.3d at 1290. Thus, the Third and Fifth Circuits adopted the rule that truthful trial testimony is per se speech on a matter of public concern. *See, e.g., Johnston*, 869 F.2d at 1578; *Pro*, 81 F.3d at 1290. Some circuits, however, have concluded that not all truthful trial testimony is speech on a matter of public concern. *See, e.g., Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1505 (7th Cir. 1994).

As argued in the Opening Brief (pp. 13–16), when the Tenth Circuit decided *Worrell*, the Tenth Circuit chose to follow the Third and Fifth Circuits' per se rule. This is evident for two reasons: (1) *Worrell*'s reasoning relied on both *Johnston* and *Pro*, and (2) the per se rule was necessary to *Worrell*'s holding regarding Turner's governmental immunity. *See Worrell*, 219 F.3d at 1204–05, 1215–16.

By 2004, courts and commentators widely acknowledged that the federal circuits were split on the question of whether truthful trial testimony is per se speech on a matter of public concern. *See, e.g., Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 926–27 n.6 (9th Cir. 2004) (collecting cases).

A decade later, the United States Supreme Court reasoned as follows in *Lane v. Franks*, 573 U.S. 228 (2014):

> The content of Lane's testimony — corruption in a public
> program and misuse of state funds — obviously involves
> a matter of significant public concern. And the form and
> context of the speech — sworn testimony in a judicial

> proceeding — fortify that conclusion. "Unlike speech in other contexts, testimony under oath has the formality and gravity necessary to remind the witness that his or her statements will be the basis for official governmental action, action that often affects the rights and liberties of others."

*Lane*, 573 U.S. at 241 (quoting *United States v. Alvarez*, 567 U.S. 709, 721 (2012); other citation omitted).

Until the present case, it appears that no court or commentator ever interpreted this reasoning in *Lane* as resolving the longstanding circuit split. Rather, "courts of appeals and district courts – both before and after *Lane* – have been sharply divided on the question of whether trial testimony, irrespective of the content of the testimony, constitutes a matter of public concern protectable under the First Amendment." John E. Rumel, *Public Employee Speech: Answering the Unanswered and Related Questions in Lane v. Franks*, 34 HOFSTRA LAB. & EMP. L.J. 243, 285 (2017).

Indeed, the Fifth Circuit held that *Lane* had no impact on the Fifth Circuit's *per se* rule. And the Fifth Circuit viewed that holding as so unremarkable that the Fifth Circuit did not even publish the opinion. The Fifth Circuit reasoned:

> This court has held that when a witness testifies before a fact finding body hearing an official matter the form and context of the speech is sufficient to elevate the speech to the level of public concern. The Supreme Court has not unequivocally abrogated this line of cases. Rather, the Court held in *Lane* that the form and context of the speech in question — sworn testimony in a judicial proceeding —

8

> fortified the conclusion that the speech involved a matter
> of public concern.

*Lumpkin v. Aransas Cty.*, 712 F. App'x 350, 358–59 (5th Cir. 2017) (unpublished)

(quotations and footnotes omitted).

The majority here, however, reached a conclusion that no other court has

reached. Specifically, the majority concluded that in the portion of *Lane* quoted

above, the Supreme Court weighed in on the circuit split and took the side that

opposed a per se rule. *See* Majority Opinion, pp. 11, 15–16, 17, 20. The

majority's logic is as follows:

- The *Lane* Court reasoned that because a governmental employee testified in court, the form and context of his speech favored the conclusion that the speech was on a matter of public concern. *See* Majority Opinion, p. 11.

- But the *Lane* Court also observed that the speech's content also favored that same conclusion. *Id.*

- Thus, because the *Lane* Court examined all three factors (content, form, and context) in a case involving truthful trial testimony, *Lane* dictates that all courts must examine all three factors in every case that involves truthful trial testimony. *See id.*

- Furthermore, *Lane* dictates that the per se rule is incorrect, because the per se rule only looks at the form and context of trial testimony, not its content. *See id.* at 11, 15–16, 17, 20.

9

- Here, like in *Lane*, "the form and context of Bulter's speech — sworn testimony in a court proceeding — weigh in favor of treating it as a matter of public concern." *Id.*, p. 22.

- However, the content of Butler's speech was not on a matter of public concern. *Id.*, pp. 22–24.

- Here, this one factor, content, outweighs the other two, form and context. *See id.*, p. 24.

- Thus, even though Butler's speech was truthful trial testimony, it was not speech on a matter of public concern. *Id.*, p. 24.

There are at least four problems with this logic. First, under the majority's logic, the *Lane* Court disagreed with and possibly overruled widely-acknowledged, longstanding precedent from the Third and Fifth Circuits. And according to the majority, the *Lane* Court did so without even recognizing a circuit split, did so without even citing any case that was being disagreed with or overruled, and did so even though such reasoning was unnecessary to *Lane*'s holding. *See United States v. Bowline*, 917 F.3d 1227, 1232 (10th Cir. 2019) (reasoning that because the Supreme Court did not even cite a prior case, the Supreme Court was not overruling the prior case); *Auto-Owners Ins. Co. v. Fleming*, 701 F. App'x 738, 740 n.1 (10th Cir. 2017) (unpublished) ("[D]icta should not be taken to overrule the express holdings of [cases], which were not cited.").

Second, according to the majority's logic, the problem with the per se rule is that it elevates two factors, form and context, over the third, content. But when speech is truthful trial testimony, those two factors, form and context, will *always* favor the conclusion that the speech is on a matter of public concern. *See Lane*, 573 U.S. at 241. Thus, it is logical conclude, as many circuits have, that truthful testimony will always be on a matter of public concern, because most of the factors will always favor that conclusion.

The majority's holding, in contrast, elevates a single factor, content, over the other two, form and context. As Judge Lucero reasoned in his dissent (p. 2), "This exclusive focus on content violates the very Supreme Court mandate the majority claims to honor in rejecting a per se rule."

Third, the majority's logic artificially isolates speech's content from its context, which is contrary to both United States Supreme Court precedent and the reasoning behind the per se rule. *See Rankin v. McPherson*, 483 U.S. 378, 386 (1987); *Johnston*, 869 F.2d at 1577. As the Fifth Circuit explained when adopting the per se rule:

> [I]n *Rankin,* the content of employee's statement, alone, did not convey any thoughts of interest or concern to the public at large. Yet the Court held that the speech addressed a matter of public concern, stressing the context of the speech. The employee, so the Court holds, made a statement in the midst of a conversation about the policies of a presidential administration, a discussion that followed a news bulletin about a matter of heightened public

> attention. The political context in which the employee
> spoke was sufficient, said the Court, to elevate the speech
> to a matter of public concern—although it was in form a
> puerile expression of hope that the President of her country
> would be murdered.

*Johnston*, 869 F.2d at 1577 (citations omitted).

Just as a political context influences speech's content, *see Rankin*, 483 U.S. at 386, a courtroom context influences testimony's content. For example, witnesses can only testify to matters that are logically and legally relevant. *See* FRE 401 & 403. When witnesses fail to provide relevant testimony, they can be held in contempt of court. Thus, when witnesses take the stand, they cannot just opine on whatever subject they want. Rather, the judicial context influences the content of their testimony. The majority's reasoning fails to recognize this interrelatedness of context and content, an interrelatedness recognized by the Fifth Circuit and the United States Supreme Court. *See Rankin*, 483 U.S. at 386; *Johnston*, 869 F.2d at 1577.

Fourth, the majority's logic invites litigation in the Third and Fifth Circuits, thwarting starry decisis within those circuits. Prior to this opinion, there was a split among the circuits, but it was widely acknowledged the United States Supreme Court had not yet resolved the split. This opinion throws that conclusion into doubt. Now litigants in the Third and Fifth Circuits will cite this opinion to argue a point of law that had been resolved in those circuits for decades. Such

argument should have been reserved for en banc panels within the Third and Fifth Circuits or for the United States Supreme Court.

For these reasons, the panel decision involves a question of exceptional importance – namely, whether a public employee's truthful trial testimony is per se speech on a matter of public concern – and the decision conflicts with authoritative decisions of other United States Courts of Appeals that have addressed the issue.

III. **The Majority's Decision Involves Another Question of Exceptional Importance , Namely, What the Legal Standard is for Determining Whether Truthful Trial Testimony is Speech on a Matter of Public Concern**

As laid out above, there is both an intracircuit conflict and an intercircuit conflict on whether truthful trial testimony is per se speech on a matter of public concern. But even setting aside those conflicts, en banc review is justified to resolve a question at the core of the panel's disagreement, namely, what the legal standard is for determining whether truthful trial testimony is speech on a matter of public concern.

Even absent an intracircuit or intercircuit conflict, en banc review is justified when the panel decides "(1) a significant federal question (2) of first impression, or that has troubled the court; and (3) that is likely to recur." Eric J. Magnuson, *Federal Appeals Jurisdiction and Practice* § 14:9 (2018 ed.). That standard is met

here.

In *Wright*, even though the Seventh Circuit declined to adopt the per se rule, the Seventh Circuit still observed, "surely an employee summoned to give sworn testimony in a judicial proceeding has a compelling interest in testifying truthfully and the government employer can have an offsetting interest in preventing her from doing so only in the rarest of cases." 40 F.3d at 1505 (emphasis omitted), *quoted in* Dissenting Opinion, p.7; *see also Wright*, 40 F.3d at 1507 n.6 ("[E]xcept in the rarest of cases . . . , truthful testimony is protected speech."). The *Wright* Court went on to hold that a governmental employee spoke on a matter of public concern when she testified truthfully at a child custody hearing. *Id.* at 1505–07.

Although the majority followed *Wright* in declining to adopt the per se rule (Majority Opinion, pp. 14–15), the majority went even further than the Seventh Circuit went in *Wright*. The majority never said that truthful trial testimony will be protected speech except in the rarest of cases. *See generally* Majority Opinion. Rather, the majority simply reasoned that when Butler testified at a child custody hearing, the content of his testimony was not on a matter of public concern. *Id.* at 22–24. According to the majority, Bulter did not testify to the malfeasance of government officials, his motive for testifying "appears" to have been personal, and "[t]here is no indication that this testimony was of interest or concern to the community at large." *Id.* Based on this reasoning, the majority concluded that,

considering the content, form, and context of Butler's truthful trial testimony, the testimony was not speech on a matter of public concern.  *Id.* at 24–25.

Contrast the majority's reasoning with that of Judge Lucero in his dissent. Relying on *Wright*, *Lane*, and other cases, Judge Lucero repeatedly recognized a "significant presumption" or "strong presumption" that in-court testimony is speech on a matter of public concern.  Dissenting Opinion, pp. 3, 4, 8, & 9. According to Judge Lucero, this presumption would only be overcome in "an exceedingly rare instance."  *Id.* at 3.

Having recognized this presumption, Judge Lucero concluded that Butler's in-court testimony at a child custody hearing was speech on a matter of public concern.  *Id.* at 3–9.  Judge Lucero observed that (1) the Colorado legislature has declared child placement to be a matter of statewide concern; (2) the Colorado legislature has directed courts to independently examine a child's best interests in custody matters; (3) Colorado courts recognize the public interest in determining the child's best interest in a marriage dissolution; and (4) under the *parens patriae* doctrine, Colorado may assert an interest in the protection of children who cannot care for themselves.  *Id.* at 5–6.

Thus, a central point of disagreement among the judges presents a significant federal question, arguably of first impression (*but see* Part I, *supra*), that troubled the panel and is likely to recur.  Specifically, the majority did not

expressly recognize any presumption that truthful trial testimony is speech on a matter of public concern. Indeed, by failing to acknowledge such a presumption despite Judge Lucero's dissent, the majority arguably concluded that there is no such presumption. Judge Lucero, in contrast, would recognize a strong presumption, overcome in only exceeding rare cases, that truthful trial testimony is speech on a matter of public concern.

This Circuit should decide, en banc, what the legal standard is for determining whether truthful trial testimony is speech on a matter of public concern. Is truthful trial testimony per se speech on a matter of public concern? Or is there a strong presumption, overcome in only the rarest of cases, that truthful trial testimony is speech on a matter of public concern? Or is there no such presumption? These questions will likely determine the outcome in many future cases, just as they determined the outcome here.

Finally, even the narrowest question presented here – whether truthful trial testimony at a child custody hearing is speech on a matter of public concern – is a significant federal question that troubled the panel and is likely to recur.

## IV.    Conclusion

For these reasons, this Court should grant this petition for rehearing en banc.

Respectfully submitted this 9th day of April, 2019.

_/s/ Benjamin P. Meade_____
Nicholas W. Mayle, Esq.
Damon Davis, Esq.
Benjamin P. Meade, Esq.
Killian Davis Richter & Mayle, P.C.
Attorneys for Appellant Jerud Butler
202 North 7th Street
Grand Junction, CO 81501
970-241-0707
ben@killianlaw.com

# CERTIFICATE OF COMPLIANCE WITH RULE 40(b)(1)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 40(b)(1) because:

This brief contains 3,818 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word version 14 in 14 point times new roman font

Date: April 9, 2019

*/s/ Benjamin P. Meade*_____
Nicholas W. Mayle, Esq.
Damon Davis, Esq.
Benjamin P. Meade, Esq.
Killian Davis Richter & Mayle, P.C.
Attorneys for Appellant Eugene Foster
202 North 7th Street
Grand Junction, CO 81501
970-241-0707
ben@killianlaw.com

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;
(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;
(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program and according to the program are free of viruses.

*/s/ Benjamin P. Meade*_____
Nicholas W. Mayle, Esq.
Damon Davis, Esq.
Benjamin P. Meade, Esq.
Killian Davis Richter & Mayle, P.C.
Attorneys for Appellant Eugene Foster
202 North 7th Street
Grand Junction, CO 81501
970-241-0707
ben@killianlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2019, I electronically filed the foregoing using the court's CM/ECF system.

Jeffrey L. Driscoll, Esq. (jdriscoll@wth-law.com)


Date: April 9, 2019

/s/Benjamin P. Meade _____
Nicholas W. Mayle, Esq.
Damon Davis, Esq.
Benjamin P. Meade, Esq.
Killian Davis Richter & Mayle, P.C.
Attorneys for Appellant Jerud Butler
202 North 7th Street
Grand Junction, CO 81501
ben@killianlaw.com
970-241-0707

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 29, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JERUD BUTLER,

     Plaintiff - Appellant,

v.

BOARD OF COUNTY
COMMISSIONERS for San Miguel
County; MIKE HORNER, in his individual
capacity; KRISTL HOWARD, in
her individual capacity,

     Defendants - Appellees.

No. 18-1012

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:17-CV-00577-WYD-GPG)**
_____

Benjamin P. Meade (Nicholas W. Mayle and Damon Davis with him on the briefs),
Killian Davis Richter & Mayle, PC, Grand Junction, Colorado, for Plaintiff-Appellant.

Jeffrey L. Driscoll, Williams, Turner & Holmes, P.C., Grand Junction, Colorado, for
Defendants-Appellees.
_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **LUCERO**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

The First Amendment protects a government employee's speech (1) made as a citizen (2) on a matter of public concern (3) if the employee's right to speak outweighs the government's interest as an employer in an efficient workplace.  These are the first three steps of the familiar five-part <u>Garcetti</u>/<u>Pickering</u> analysis[1] and they present legal questions for a court to resolve.  This appeal focuses on the second inquiry, whether a public employee's speech is on a matter of public concern.  Generally, a matter of public concern relates to any matter of political, social, or other concern to the community.  In order to determine whether speech is on a matter of public concern, the Supreme Court has directed that we consider the content, form and context of the particular speech at issue in a given case.

Plaintiff-Appellant Jerud Butler is a government employee, a supervisor for the San Miguel County, Colorado, Road and Bridge Department.  He alleges that his supervisors violated his First Amendment freedom of speech when they demoted him for testifying truthfully in state court as a character witness for his sister-in-law.  The state-court proceeding concerned a domestic child custody dispute between Butler's sister-in-law and her ex-husband, who also works for the County's Road and Bridge Department.

The district court dismissed Butler's First Amendment claim with prejudice under Fed. R. Civ. P. 12(b)(6), concluding at step two of the <u>Garcetti</u>/<u>Pickering</u> analysis that Butler's testimony at the custody hearing, given as a private citizen, was

---

[1] <u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006); <u>Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205</u>, 391 U.S. 563 (1968).

not on a matter of public concern. Having jurisdiction under 28 U.S.C. § 1291, we AFFIRM. In doing so, we reject Butler's assertion that any truthful sworn testimony given by a government employee in court as a citizen is per se always a matter of public concern. The rule Butler suggests, and which several circuits have adopted, gives dispositive weight to the form and context of a public employee's speech (sworn testimony in a judicial proceeding), but fails to give any weight to the content of that testimony. We, instead, employ a case-by-case approach, considering whether, in this particular case, the content of Butler's testimony, as well as its form and context, make it speech involving a matter of public concern. After applying such an analysis here, we conclude that Butler's testimony during the child custody proceeding was not on a matter of public concern. Although Butler's testimony involved a matter of great significance to the private parties involved in the proceeding, it did not relate to any matter of political, social or other concern of the larger community.

## I. BACKGROUND

At the motion-to-dismiss stage, we accept as true all of Butler's well-pled factual allegations and view them in the light most favorable to him. See Straub v. BNSF Ry. Co., 909 F.3d 1280, 1287 (10th Cir. 2018). Butler alleged the following: He works for the San Miguel County Road and Bridge Department. On September 1, 2016, the County promoted Butler to a district supervisor position. Six days later, on September 7, "Butler testified in a child custody hearing in Montrose County . . . involving his sister-in-law and her ex-husband, who is also an employee of the San

3

Miguel County, Road and Bridge Department." (Aplt. App. 10 ¶ 15.) "Butler was asked to testify as a character witness on behalf of his sister-in-law"; he "would have been required to testify pursuant to a subpoena had he not agreed to testify . . . ." (Id. ¶¶ 16-17.) "At the hearing, Butler was asked, among other things, about the hours of operation for the San Miguel County Road and Bridge Department." (Id. ¶ 18.) He "responded truthfully to the question based upon his own personal knowledge." (Id. ¶ 19.) "At the hearing, Butler neither stated nor implied that he was testifying on behalf of the County." (Id. ¶ 20.)

Almost two weeks later, Mike Horner, who was San Miguel County's Road and Bridge Director, and Kristl Howard, the County's Human Resources Director, "conducted an investigation into Butler's testimony at the hearing." (Id. 10 ¶ 22.) "Following the investigation, Horner and Howard gave Butler a Written Reprimand and demotion."[2] (Id. ¶ 23.)

Butler sued the two County directors who demoted him, Horner and Howard, under 42 U.S.C. § 1983, alleging that they violated Butler's right to free speech under

---

[2] In addition to these facts that Butler alleged in his complaint, Defendants also asked the district court, over Butler's objection, to consider facts contained in the written reprimand that the County issued Butler. Butler had not attached that document to his complaint and, although Defendants asserted that they attached the written reprimand to their motion to dismiss, it is not clear that they actually did so. In any event, the district court declined to consider the contents of the written reprimand when the court ruled on Defendants' motion to dismiss. Although on appeal both sides cite to facts apparently contained in the reprimand, neither side has provided us with a copy of the reprimand. Under these circumstances, we also decline to consider it. We do not need to consult the contents of the written reprimand, in any event, in order to resolve this appeal because the reprimand's contents appear to pertain only to step three of the Garcetti/Pickering test.

the First and Fourteenth Amendments by demoting him for testifying truthfully at the custody hearing.  See Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31, 138 S. Ct. 2448, 2463 (2018) (noting First Amendment applies to states through Fourteenth Amendment).  Defendants moved to dismiss this claim under Fed. R. Civ. P. 12(b)(6).  The district court granted that motion, ruling that Butler had failed to allege a First Amendment violation because his triggering speech was not on a matter of public concern, and the court dismissed with prejudice Butler's § 1983 claims against the two individual Defendants.  It is that decision that Butler challenges on appeal.[3]

## II. DISCUSSION

We review de novo the district court's decision to grant Defendants' Rule 12(b)(6) motion to dismiss and in doing so we accept as true all well-pled factual allegations, viewing those facts in the light most favorable to Butler.  See Straub, 909 F.3d at 1287.  "To withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The individual Defendants, Horner and Howard, sought dismissal of Butler's First Amendment claim, asserting they were each entitled to qualified immunity.  To

---

[3] Butler also alleged a state-law claim against the County Board of Commissioners under Colorado's Lawful Off-Duty Conduct Act, Colo. Rev. Stat. § 24-34-402.5. After dismissing Butler's § 1983 claim, the district court declined to exercise supplemental jurisdiction over this state-law claim and dismissed it without prejudice.  Butler does not challenge that ruling on appeal.

overcome Defendants' qualified-immunity defense, Butler had to allege that (1) the individual Defendants violated Butler's constitutional rights, and that (2) those rights were clearly established at the time of the alleged violation.  See Pearson v. Callahan, 555 U.S. 223, 232 (2009); Doe v. Woodward, 912 F.3d 1278 (10th Cir. 2019).  A court can consider these two inquiries in any order.  See Pearson, 555 U.S. at 236.  In this case, the district court granted Defendants' motion to dismiss at the first qualified-immunity inquiry, holding Butler had failed to allege a First Amendment violation.

In reaching that decision, the district court applied the five-part Garcetti/Pickering analysis, which asks:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

Bailey v. Indep. Sch. Dist. No. 69, 896 F.3d 1176, 1181 (10th Cir. 2018); see also Lane v. Franks, 573 U.S. 228, 236-37 (2014).  "In general, the first three prongs are legal issues to be decided by the court and the last two prongs are factual issues left to the factfinder."  Bailey, 896 F.3d at 1181.

In this case, Defendants conceded the first Garcetti/Pickering inquiry, that Butler testified as a private citizen, but moved to dismiss arguing that Butler had failed to allege adequate facts to succeed on either the second or third

Garcetti/Pickering inquiry.  The district court granted the motion to dismiss, ruling at

the second Garcetti/Pickering step that Butler had failed to allege that his testimony

was on a matter of public concern.

      "Speech involves matters of public concern when it can be fairly considered as

relating to any matter of political, social, or other concern to the community, or when

it is a subject of legitimate news interest; that is, a subject of general interest and of

value and concern to the public."  Lane, 573 U.S. at 241 (internal quotation marks

omitted); see also Bailey, 896 F.3d at 1181 ("Matters of public concern are issues of

interest to the community, whether for social, political, or other reasons."  (internal

quotation marks omitted)).  For example, "[s]tatements revealing official impropriety

usually involve matters of public concern."  Trant v. Oklahoma, 754 F.3d 1158, 1165

(10th Cir. 2014) (internal quotation marks omitted); see also Eisenhour v. Weber

Cty., 744 F.3d 1220, 1228 (10th Cir. 2014) ("Speech involves a public concern when

the speaker intends to bring to light actual or potential wrongdoing or breach of

public trust by a public official or to disclose any evidence of corruption,

impropriety, or other malfeasance within a governmental entity." (internal quotation

marks, alterations omitted)).  Speech aimed at "air[ing] grievances of a purely

personal nature" is generally not on a matter of public concern.  Lighton v. Univ. of

Utah, 209 F.3d 1213, 1225 (10th Cir. 2000); see also Morris v. City of Colo. Springs,

666 F.3d 654, 661 (10th Cir. 2012) ("Speech relating to internal personnel disputes

and working conditions ordinarily" does not "address[ ] matters of public concern."

(internal quotation marks, alteration omitted)).  "Courts construe 'public concern'

very narrowly." <u>Leverington v. City of Colo. Springs</u>, 643 F.3d 719, 727 (10th Cir. 2011) (internal quotation marks omitted).

The <u>Garcetti</u>/<u>Pickering</u> analysis limits the First Amendment protection of a government employee's speech to speech on matters of public concern—"the core value of the Free Speech Clause of the First Amendment," <u>Pickering</u>, 391 U.S. at 573—in order "to ensure that citizens are not deprived of fundamental rights by virtue of working for the government." <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983). This is not to suggest that the First Amendment only protects speech on matters of public concern. <u>See id.</u> But in the context of public employment,

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

<u>Id.</u> "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." <u>Id.</u> at 146. "Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable." <u>Id.</u>; <u>see also Garcetti</u>, 547 U.S. at 418 (stating that if public employee did not speak as a citizen on a matter of public concern, "the

employee has no First Amendment cause of action based on his or her employer's reaction to the speech").

On appeal, Butler asserts two reasons why the district court erred in concluding that his testimony was not on a matter of public concern.  First, he argues that any sworn testimony given by a public employee should per se always be a matter of public concern.  Secondly, he contends that even if we do not adopt a per se rule, in this case his testimony was, in fact, on a matter of public concern, based on the state's general interest in child welfare and fair custody proceedings.  We are not persuaded by either argument.

## A. We reject Butler's argument that any sworn testimony given by a public employee is per se always a matter of public concern

Butler first argues for a sweeping per se evidentiary rule that would treat any sworn testimony given by a public employee in a judicial proceeding as always a matter of public concern.  We reject such a per se rule because the Supreme Court has, instead, mandated a case-by-case approach, directing us to consider the <u>content</u>, <u>form</u> and <u>context</u> of the testimony in light of the record as a whole in a particular case.

### 1. The Supreme Court's mandate

The Supreme Court has directed courts, "[i]n assessing whether speech pertains to a matter of public concern," to "consider 'the content, form, and context of a given statement, as revealed by the whole record.'"  <u>Bailey</u>, 896 F.3d at 1181 (quoting <u>Connick</u>, 461 U.S. at 147-48).  We employ this case-by-case approach in

determining whether any other kind of public-employee speech is on a matter of
public concern.  See id.; Nixon v. City & Cty. of Denver, 784 F.3d 1364, 1367-69
(10th Cir. 2015).

Specifically as to a government employee's speech in the form of sworn
testimony given in a court proceeding, the Supreme Court itself applied Connick's
case-by-case approach in Lane v. Franks, 573 U.S. 228 (2014), to decide whether a
public employee's truthful sworn testimony was on a matter of public concern.  The
overall question presented in Lane was whether the plaintiff, Edward Lane, a public
official at a community college, was fired for testifying truthfully in criminal
proceedings against a former employee—a state representative—who Lane had fired
for collecting her paycheck but never coming to work.  Id. at 231-34.  In deciding
whether Lane's testimony was a matter of public concern, the Court examined the
content, form and context of the particular testimony that Lane gave, concluding:

> [t]he content of Lane's testimony—corruption in a public program and
> misuse of public funds—obviously involves a matter of significant public
> concern.  See, e.g., Garcetti, 547 U.S., at 425 . . . ("Exposing
> governmental inefficiency and misconduct is a matter of considerable
> significance").  And the form and context of the speech—sworn testimony
> in a judicial proceeding—fortify that conclusion.  "Unlike speech in other
> contexts, testimony under oath has the formality and gravity necessary to
> remind the witness that his or her statements will be the basis for official
> governmental action, action that often affects the rights and liberties of
> others."  United States v. Alvarez, 567 U.S. [709, 721], . . . (2012)
> (plurality opinion).

Lane, 573 U.S. at 241.

In Lane, then, the Supreme Court applied the case-specific analysis that the
Court previously set forth in Connick, considering the content, form and context of a

public-employee's speech in order to decide whether Lane's sworn testimony in that case was on a matter of public concern.  Although Lane, in considering the form and context of the government employee's speech, held that sworn testimony in a judicial proceeding "fortifies" a matter-of-public-concern finding, the Court did not declare that sworn testimony in a judicial proceeding is per se a matter of public concern. See Helget v. City of Hays, 844 F.3d 1216, 1228 (10th Cir. 2017) (Tymkovich, C.J., concurring).  To the contrary, Lane addressed all the underlying facts, including the particular subject matter of the testimony at issue in determining whether the public employee could maintain a cause of action against his public employer for firing him. We do not doubt that often a government employee's court testimony, even though given as a private citizen, will involve matters of public concern.  Even so, Lane indicates that we must consider the content of that testimony before determining whether it is, in a given case, on a matter of public concern.  Lane establishes that, while the fact that the speech at issue is sworn testimony given in a judicial proceeding is a factor to consider, that fact is not alone dispositive and, thus, a per se rule to that effect is inappropriate.

Following Lane's analytical framework leads us to familiar territory. Applying Connick's case-by-case consideration of the content, form, and context is how we usually decide whether other types of government-employee speech address a matter of public concern.  For example, in Bailey, this court had to determine whether "a letter written by a public employee, seeking a reduced sentence for his relative," was "speech on a matter of public concern."  896 F.3d at 1179.  In making

that determination, we "consider[ed] 'the content, form, and context of a given statement, as revealed by the whole record.'" Id. at 1181 (quoting Connick, 461 U.S. at 147-48); see also Nixon, 784 F.3d at 1367-69 (considering these same factors in determining whether statements a police officer made were on a matter of public concern).

### 2. The circuit split that developed prior to Lane

Butler points out that, prior to Lane, the Fifth and Third Circuits adopted a per se rule treating any truthful sworn testimony given by a government employee as always a matter of public concern. See Johnston v. Harris Cty. Flood Control Dist., 869 F.2d 1565, 1578 (5th Cir. 1989) (holding, in case addressing government employee's testimony before "County Commissioner's Court" in support of fellow employee's EEOC complaint, that "[w]hen an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern"); see also Latessa v. N.J. Racing Comm'n, 113 F.3d 1313, 1319 (3d Cir. 1997) (stating Third Circuit has held "that a public employee's truthful testimony before a government adjudicating or fact-finding body, whether pursuant to subpoena or not, is a matter of public interest" (citing Green v. Philadelphia Housing Auth., 105 F.3d 882, 887 (3d Cir. 1997)).[4]  These two circuits reasoned:

---

[4] After Lane, the Fifth Circuit reaffirmed its per se rule in an unpublished decision. See Lumpkin v. Aransis Cty., 712 F. App'x 350, 358 (5th Cir. 2017) (unpublished) (stating that Lane did "not 'unequivocally abrogate[]'" that circuit's Johnston line of cases holding that a public employee's sworn testimony is per se a matter of public concern).  In light of that, and because Lane did not expressly consider the possibility of a per se rule, we go ahead and address the Third and Fifth Circuits' per se rule,

As a general rule, when a public employee speaks about matters that are of personal interest only, the speech does not address matters of public concern.  Connick, 461 U.S. at 147 . . . .  Under certain circumstances, however, the context in which the employee speaks may be sufficient to elevate the speech to the level of public concern. . . .

When an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern. Our judicial system is designed to resolve disputes, to right wrongs. We encourage uninhibited testimony, under penalty of perjury, in an attempt to arrive at the truth. We would compromise the integrity of the judicial process if we tolerated state retaliation for testimony that is damaging to the state.  If employers were free to retaliate against employees who provide truthful, but damaging, testimony about their employers, they would force the employees to make a difficult choice.  Employees either could testify truthfully and lose their jobs or could lie to the tribunal and protect their job security. . . . Thus, a grand jury witness speaks on matters of public concern when he furnishes truthful information to the grand jury on a matter that the grand jury properly is investigating. Likewise, when one state employee testifies in another employee's civil action against their mutual state employer, the witness's testimony constitutes a matter of public concern for First Amendment purposes. The goal of grand jury proceedings, of criminal trials, and of civil trials is to resolve a dispute by gathering the facts and arriving at the truth, a goal sufficiently important to render testimony given in these contexts speech "of public concern."

Johnston, 869 F.2d at 1577-78 (citations, internal quotation marks omitted); see also

Green, 105 F.3d at 886-87.

Although Johnston's examples include circumstances that would frequently

involve testimony relating to matters of public concern even without a per se rule—

testimony about government employers or matters being investigated by a grand

jury—these circuits have also applied this per se rule to testimony that is less

---

even though we have already concluded that the Supreme Court's cases, Connick and Lane, are dispositive here.

obviously about matters of public concern.  For example, the Third Circuit applied its

per se rule to hold that a government employee called by her boss's wife to testify as

a character witness for the wife in a divorce proceeding was engaged in speech of a

public concern, even though she was called to testify in "a purely private matter."

Pro v. Donatucci, 81 F.3d 1283, 1285, 1287-91 (3d Cir. 1996) (relying on Fifth

Circuit cases).

In adopting a per se rule, the Third and Fifth Circuits focus on the form (sworn

testimony) and context (speech before a government adjudicatory or fact-finding

body) of the government employee's speech, to the exclusion of its content,

concluding that "the context of a courtroom appearance raises speech to a level of

public concern, regardless of its content," Green, 105 F.3d at 887.  But such an

approach contradicts the Supreme Court's directive in Connick that we consider all

three factors—content, form and context—before deciding, on a case-by-case basis,

whether a government employee's speech in a given case is on a matter of public

concern.

In light of that, other circuits, even before Lane, declined to adopt a per se rule

that always treats a government employee's truthful sworn testimony as a matter of

public concern.  The Seventh Circuit explained:

> Drawing on Fifth Circuit cases, [Plaintiff] suggests that we ought to
> conclude that an employee who testifies before an official government
> adjudicatory or fact-finding body speaks in a context that is inherently of
> public concern. See Johnston v. Harris County Flood Control Dist., 869
> F.2d 1565, 1578 (5th Cir.1989) (citations omitted). Although we share
> our colleagues' concern for the integrity of the judicial process, our cases
> have rejected a blanket rule according absolute First Amendment

> protection to communications made in the course of a lawsuit. Such a rule would contravene both the rationale of [Supreme Court] cases like Connick and Pickering that public employee speech is protected against employer retaliation only if it addresses matters of public concern and the premise of McDonald v. Smith, 472 U.S. 479, 484–85 . . . (1985), that there is no sound basis for granting greater constitutional protection to statements made under the Petition Clause than to other run-of-the-mill speech or expression. In short, airing private gripes in the form of a complaint or testimony cannot alter their status as private gripes.

Wright v. Ill. Dep't of Children & Family Servs., 40 F.3d 1492, 1505 (7th Cir. 1994) (citations omitted); see Padilla v. S. Harrison R-II Sch. Dist., 181 F.3d 992, 996-97 (8th Cir. 1999) (declining to apply the Fifth Circuit's per se rule; holding teacher's testimony about propriety of a hypothetical sexual relationship between a teacher and a student was not a matter of public concern); see also Maggio v. Sipple, 211 F.3d 1346, 1351-54 (11th Cir. 2000) (considering form of speech (testimony during non-public grievance hearing), and its context and content (testimony given in support of supervisor's "private grievance," which did not involve government fraud or corruption), in determining that plaintiff's testimony was not on a matter of public concern); Arvinger v. Mayor & City Council, 862 F.2d 75, 76-79 (4th Cir. 1988) (reversing district court's decision that plaintiff's statement "during a coworker's fair employment hearing that he did not know whether . . . marijuana found in his van belonged to [his] coworker" was a matter of public concern because in reaching that conclusion, district court "improperly elevated context over content").

These conflicting pre-Lane authorities bolster our decision to reject a per se rule that would treat all public employees' sworn testimony as always a matter of public concern.  First and foremost, such a rule contradicts the Supreme Court's

mandate, set forth in <u>Connick</u> and applied in <u>Lane</u>, that we decide whether speech is

on a matter of public concern on a case-by-case basis, considering the content, form

and context of the speech in a given case, on the record as a whole.  In addition,

although we, like the Seventh Circuit, share the Fifth and Third Circuits' concern for

maintaining the integrity of the truth-seeking functions of courts, protecting the

integrity of judicial proceedings is not the purpose of the <u>Garcetti</u>/<u>Pickering</u> analysis.

That analysis, instead, determines when the First Amendment protects a public

employee's speech, as well as the public's interest in having well-informed views of

public employees contribute to our civic discourse.  <u>See</u> <u>Garcetti</u>, 547 U.S. at 419.

There are any number of other ways that courts protect the integrity of their truth-

seeking function, including subpoena and contempt powers, cross-examination, and

criminal sanctions for perjury, without expanding the essential task of

<u>Garcetti</u>/<u>Pickering</u>.

Giving sworn testimony publicly in court often has consequences, even for

non-public employees.  Witnesses to crimes, witnesses to domestic abuse, witnesses

to serious torts or business fraud all can encounter serious repercussions because of

their testimony.  We, and our nation, salute the courage of such witnesses and

recognize that our system of justice depends on such witnesses of courage and

integrity.  Society seeks to protect such witnesses in a variety of ways, and for public

employees testifying as citizens about a matter of public concern, <u>Garcetti</u>/<u>Pickering</u>

affords such witnesses significant First Amendment protection when their interest in

speaking outweighs their government employer's interest in an efficient workplace.

But we cannot, nor do we see the need to, apply that First Amendment protection using per se rules that contradict the Supreme Court's mandate in <u>Connick</u> and <u>Lane</u>.

### 3. The Tenth Circuit did not adopt a per se rule prior to <u>Lane</u>

For the first time on appeal, Butler contends that this court has already joined the Fifth and Third Circuits in adopting a per se rule treating all sworn testimony by a government employee as a matter of public concern.[5]  But it would be quite extraordinary for this court to adopt a per se rule that directly contradicts the Supreme Court's mandate in <u>Connick</u> and <u>Lane</u> for a case-by-case analysis.  In fact, each of the Tenth Circuit cases on which Butler relies was decided before <u>Lane</u> and none expressed or adopted a per se rule.  So, Butler cannot point to any Tenth Circuit case, even before <u>Lane</u>, expressly adopting the per se rule for which he now advocates.

Instead, Butler relies on language in some of our earlier case law which he misconstrues to suggest a per se rule.  Butler specifically points to <u>Melton v. City of Oklahoma City</u>, 879 F.2d 706, 711-12 (10th Cir. 1989), <u>overruled en banc on other grounds by</u>, 928 F.2d 920, 922 (10th Cir. 1991), <u>Langley v. Adams County</u>, 987 F.2d 1473, 1479 (10th Cir. 1993), <u>Worrell v. Henry</u>, 219 F.3d 1197 (10th Cir. 2000), and

---

[5] While usually "we will not consider issues raised for the first time on appeal," here Butler has "simply offer[ed] new legal authority for the position he advanced before the district court."  <u>Schulenberg v. BNSF Ry. Co.</u>, 911 F.3d 1276, 1286 n.4 (10th Cir. 2018) (alterations, internal quotation marks omitted); <u>cf.</u> <u>First W. Capital Mgmt. Co. v. Malamed</u>, 874 F.3d 1136, 1145 (10th Cir. 2017) (noting this court has discretion "to determine an issue raised for the first time on appeal if it is a pure matter of law and its proper resolution is certain" (internal quotation marks omitted)).

Lytle v. City of Haysville, 138 F.3d 857, 864 n.2 (10th Cir. 1998).[6]  All of the language from these cases on which Butler relies is to the same effect: "The First Amendment protects the right to testify truthfully at trial," Melton, 879 F.2d at 714; see also Langley 987 F.2d at 1479 (stating in dicta that "[t]he 'First Amendment protects the right to testify truthfully at trial'" (quoting Melton, 879 F.2d at 714)); Worrell, 219 F.3d at 1204-05 (stating generally in dicta that "[i]n the last few decades, federal courts have afforded additional protection to witnesses who are employed by the government, concluding that truthful testimony is protected by the First Amendment and that a government employee may not be fired or subjected to other adverse action as a result of such testimony" (citing Melton, 879 F.2d at 714)); Lytle, 138 F.3d at 864 n.2 (stating in dicta that "[t]his circuit has concluded that a witness's sworn testimony in a court proceeding is entitled to heightened protection under the First Amendment" (citing Melton, 879 F.2d at 714)).

These general statements on which Butler relies are unremarkable.  Of course the First Amendment protects sworn testimony as speech.  But that protection, like most constitutional protections, is not absolute.  See Virginia v. Black, 538 U.S. 343, 358 (2003) (stating that "[t]he protections afforded by the First Amendment . . .are not absolute"); see also W. Coast Hotel Co. v. Parrish, 300 U.S. 379, 391 (1937) (stating that, while Fourteenth Amendment prohibits deprivation of liberty without

---

[6] Butler also relies on Gilchrist v. Citty, 71 F. App'x 1, 4 (10th Cir. 2003) (unpublished), but, as an unpublished decision, Gilchrist is not binding on our panel. See United States v. Johnson, 911 F.3d 1062, 1071 (10th Cir. 2018) (citing Tenth Cir. R. 32.1(A)).

due process, it "does not recognize an absolute and uncontrollable liberty"); United States v. Cox, 906 F.3d 1170, 1184 (10th Cir. 2018) (noting Second Amendment "right to keep and carry arms, like other constitutional guaranties, has limits"). The whole point of the Garcetti/Pickering balancing test is to determine when and how the First Amendment protects a public employee's speech. See Worrell, 219 F.3d at 1205 (stating, in applying Pickering balancing test, that "First Amendment protection of public employees' testimony is not absolute"). The problem with deeming constitutional protections to be absolute and without exception is determining what happens when one absolute protection conflicts with another absolute constitutional guarantee. Such a potential conflict between absolutes counsels against adopting a blanket, per se constitutional protection and similarly, counsels against adopting a per se rule here in applying the Garcetti/Pickering analysis to decide when the First Amendment protects a government employee's speech.

Interpreting the general language Butler cites from our earlier, pre-Lane cases in such an absolute way is, any event, contrary to the actual analyses this court applied in those cases. In Melton, for example, this court in fact applied a case-by-case analysis, considering the content, form and context of the testimony at issue, just as Connick required, before concluding that the testimony at issue there was on a matter of public concern. See 879 F.2d at 713-14. It was not until Melton turned to the next step in the Supreme Court's Pickering analysis, balancing the employee's free speech interest with the government employer's interest in an efficient

workplace, that this court used the general language about the First Amendment's protection of sworn testimony.  See Melton, 879 F.2d at 713-14.

In our other published cases that followed Melton, we used similar general language indicating that the First Amendment protects testimony only in dicta; in those cases, this court did not need to address whether the testimony at issue was on a matter of public concern because the parties agreed that it was.  See Worrell, 219 F.3d at 1204-06[7]; Lytle, 138 F.3d at 864 n.2; Langley, 987 F.2d at 1479.

All of these cases, in any event, came before Lane, and none addressed whether to adopt a per se rule treating all truthful sworn testimony given by a government employee in court as always a matter of public concern.  Moreover, later Tenth Circuit cases recognize that this court has never expressly considered whether to adopt a per se rule treating all testimony by government employees as a matter of public concern.  See Deutsch v. Jordan, 618 F.3d 1093, 1099 n.1 (10th Cir. 2010) (recognizing circuit split, indicating "[t]his circuit's precedents have not explicitly

---

[7] Butler contends that, while this portion of Worrell might be dicta, later portions of Worrell that also relied upon the statement that testifying truthfully is protected by the First Amendment were not dicta.  But those later portions of Worrell addressed a different question, whether government defendants that were not Worrell's employer violated his First Amendment rights.  219 F.3d at 1209-12.  As to those claims against non-employers, Worrell had to show that (1) he engaged in activity protected by the First Amendment, (2) the defendants' actions injured Worrell, and (3) the defendants' actions were substantially motivated by Worrell's protected activity.  Id. at 1212-13.  It was in that context, in addressing whether Worrell had engaged in protected activity, that Worrell stated that it is clearly established that testifying truthfully is an activity protected by the First Amendment.  Id. at 1213, 1215.  In that analysis, it was unnecessary for us to decide whether Worrell's testimony was on a matter of public concern.  And it bears repeating that the First Amendment protection of sworn testimony is not absolute.

adopted a per se rule," and declining to address the question in that case); see also

Helget, 844 F.3d at 1229 (Tymkovich, C.J., concurring) (noting, after Lane, that

neither the Supreme Court nor the Tenth Circuit has adopted a per se rule treating all

testimony by a government employee as a matter of public concern).

> **4. In conclusion: We reject Butler's argument for a per se rule and instead apply the case-by-case approach the Supreme Court mandated in Connick and applied in Lane**

We, therefore, decline to adopt the per se rule that Butler seeks, which would

automatically treat all truthful sworn testimony by government employees as always

a matter of public concern, regardless of its content.  Instead, following the Supreme

Court's mandate in Connick, as applied in Lane and a majority of other circuits, we

consider on a case-by-case basis the content, form, and context of a government

employee's testimony at issue in a given case in order to determine whether it

involves a matter of public concern.

**B. Applying such a case-by-case approach here, Butler failed to allege that his testimony during the child custody hearing involved a matter of public concern**

Butler's second argument is that, even if we decline to adopt a per se rule for

sworn testimony, as we have, his testimony at the child custody proceeding in this

particular case was in fact on a matter of public concern.  Considering the content,

form, and context of that testimony, we disagree.

In considering the content, form, and context of a government employee's

speech in prior cases, we have noted that we "may consider the motive of the

speaker, and whether the speech merely deals with personal disputes and grievances

unrelated to the public's interests." <u>Bailey</u>, 896 F.3d at 1181 (internal quotation marks omitted).  "[S]peech that exposes official impropriety generally involves matters of public concern, while speech that simply airs grievances of a purely personal nature typically does not." <u>Nixon</u>, 784 F.3d at 1367-68 (internal quotation marks omitted).

Like the Supreme Court in <u>Lane</u>, we conclude in this case that the form and context of Butler's speech—sworn testimony in a court proceeding—weigh in favor of treating it as a matter of public concern.  <u>See Lane</u>, 573 U.S. at 2380 (stating that "the form and context of the speech" at issue there—"sworn testimony in a judicial proceeding—fortify" the conclusion that Lane's testimony about "corruption in a public program and misuse of state funds" was a matter of public concern).

However, as for the content of the speech, the complaint does not tell us much about Butler's testimony.  We know that he was testifying as a character witness for his sister-in-law in a child custody proceeding, which is a purely personal dispute that certainly has great significance for the parties involved but is ordinarily not of general interest to the community as a whole.  We know Butler testified, among other things, as to the County Road and Bridge department's hours of operation, although we do not know what he said in this regard.[8]  This general topic, however, seems quite uncontroversial; the hours of operation of the County Road and Bridge Department is surely a matter of public knowledge and appears to be a non-

---

[8] Butler has never asserted that he could adequately plead that his testimony was on a matter of public concern by amending his complaint.

controversial fact.  While this testimony may have been relevant to the custody determination (particularly the availability of one of the parties to discharge parenting duties to the child involved) it does not bring this testimony on an otherwise personal dispute into the realm of public concern.  It does not, for example, touch on any matter involving impropriety or malfeasance of government officials.  It appears, instead, that Butler's motive for testifying was personal—to support his sister-in-law and attest to her character in a custody dispute.  See Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988) (per curiam) (considering motive of speaker, "i.e., whether the speech was calculated to disclose misconduct or dealt with only personal disputes or grievances with no relevance to the public interests").

Butler asserts that his testimony at a child custody proceeding was a matter of public concern in light of the State of Colorado's concern for the welfare of children and the fair resolution of child custody matters.  We accept that Colorado has a general interest in these matters.  But "[i]t is not sufficient that the topic of the speech be of general interest to the public; in addition, what is *actually said* must meet the public concern threshold."  Nixon, 784 F.3d at 1368 (internal quotation marks omitted).  "A statement does not attain the status of public concern simply because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest."  Leverington, 643 F.3d at 727.  Here, Butler testified in support of his sister-in-law during a personal dispute with her ex-husband over the custody of their child, regarding both the sister-in-law's character and the hours of operation for the County's Road and Bridge

Department.  There is no indication that this testimony was of interest or concern to the community at large.

Contrast Butler's testimony with the testimony at issue in the Seventh Circuit's decision in <u>Wright</u>, 40 F.3d at 1505-06, a case on which Butler relies.  <u>Wright</u> held that the specific government-employee testimony at issue in that case, given in a child custody proceeding, was speech on a matter of public concern.  40 F.3d at 1502, 1505.  But <u>Wright</u> did not hold, as Butler appears to assert, that <u>any</u> testimony given in any child custody hearing is a matter of public concern.  Instead, <u>Wright</u> held that a social worker's report and testimony regarding "her version of the procedural and substantive shortcomings of the Department's official investigation of the case" was a matter of public concern as it pertained to "the State's methods of investigating an allegation of child abuse," as it addresses serious systemic deficiencies in the operation of a public department.  <u>Id.</u>  That testimony is much different than Butler's testimony here, speaking to the character of his sister-in-law and stating the hours of operation of the County's Road and Bridge Department.  After considering the content, form, and context of Butler's testimony at issue here, we agree with the district court that it was <u>not</u> on a matter of public concern.

## III. CONCLUSION

For the foregoing reasons, then, we decline to adopt a per se rule that all truthful testimony given by a government employee is always a matter of public concern.  We instead apply the case-by-case approach mandated by the Supreme Court, considering the content, form, and context of the specific testimony by a

government employee at issue in a given case.  Applying that approach here, we conclude Butler's specific testimony as a character witness for his sister-in-law during a child custody hearing was not a matter of public concern.  Therefore, we AFFIRM the district court's dismissal of Butler's § 1983 claims against the two individual defendants, Horner and Howard.

18-1012, <u>Butler v. Board of County Commissioners</u>

**LUCERO**, J., dissenting.

I respectfully dissent.

Shortly after his promotion to a position as District Supervisor for the San Miguel County Road and Bridge Department, Jerud Butler was demoted for providing truthful testimony in a judicial proceeding. He had testified as a character witness in a child custody matter, and answered truthfully a question about the Department's hours of operation. The proceedings involved a child of his sister-in-law and her ex-husband, a fellow employee of the Department. Had Butler not testified willingly, he would have been compelled to do so through subpoena. Butler testified in his personal capacity and on his own time. For having thus testified, Butler was demoted and reprimanded in writing.

My respected colleagues conclude that the First Amendment does not protect Butler's testimony because his speech did not raise a matter of public concern. They incorrectly interpret <u>Lane v. Franks</u>, 573 U.S. 228 (2014), to hold that a supervisor does not violate an employee's First Amendment rights by retaliating against that employee for providing truthful testimony in a child custody proceeding. Neither <u>Lane</u> nor any other case the majority cites carries that muddy water. Accordingly, I do not join the majority's application of the "content, form, and context" analysis required by <u>Lane</u> and cases that precede it. <u>See</u> <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983).

My colleagues recognize the form and context of Butler's speech in a judicial proceeding "weigh in favor of treating it as a matter of public concern," (Majority Op.

22), yet proceed to engage in a myopic analysis of the content alone to declare the speech was not a matter of public concern.  This exclusive focus on content violates the very Supreme Court mandate the majority claims to honor in rejecting a per se rule.  See Snyder v. Phelps, 562 U.S. 443, 454 (2011) ("In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said.").

It is difficult for me to accept the proposition that society's concern in the custody of a child can be as personal as the majority pronounces.  To be sure, participants in the proceeding may have personal concerns regarding the custody of a child, but the overarching public interest in the well-being of children cannot be so easily ignored. "Merely because speech concerns an issue of personal importance does not preclude its treatment as a public matter."  Bailey v. Indep. Sch. Dist. No. 69, 896 F.3d 1176, 1182 (10th Cir. 2018).  Although the custody of a child is partly personal in nature, it is at its root a societal and public issue.

I would hold that Butler's testimony was on a matter of public concern.  Further, I would hold that Butler's First Amendment right to testify in a child custody proceeding without suffering employer retaliation was clearly established.  Lane explained that "the form and context of . . . speech—sworn testimony in a judicial proceeding—fortify th[e] conclusion" that such speech is a matter of public concern.  573 U.S. at 236-37. Moreover, the Colorado General Assembly's pronouncements on the importance of child welfare in divorce proceedings render obvious the fact that child custody disputes are matters of public concern.

2

# I

"Matters of public concern are issues of interest to the community, whether for social, political, or other reasons." Bailey, 896 F.3d at 1181 (quotation omitted). "The inquiry turns on the content, form, and context of the speech." Lane, 573 U.S. at 241 (quotation omitted). As noted above, "no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech." Snyder, 562 U.S. at 454.

There can be no question that the form and context of in-court testimony establish a significant presumption that the speech raises matters of public concern. As explained by the Supreme Court in Lane, the form and context of "sworn testimony in a judicial proceeding" should "fortify th[e] conclusion" that it involves "a matter of significant public concern." Id. at 236-37. "Unlike speech in other contexts, testimony under oath has the formality and gravity necessary to remind the witness that his or her statements will be the basis for official governmental action, action that often affects the rights and liberties of others." Id. (quotation omitted). Not unlike sentencing hearings, which we have held invoke matters of public concern, child custody proceedings "are funded by the public, and take place, at least theoretically, within the public eye as matters of public record." Bailey, 896 F.3d at 1181.

Integrity of our judicial process depends upon witnesses' willingness to provide truthful testimony. I would be far more reluctant than my colleagues to hold that this case presents an exceedingly rare instance in which testimony in judicial proceedings does not raise a matter of public concern. A fundamental tenet of due process is the right to call, confront, and cross examine witnesses. See Green v. Phila. Hous. Auth., 105

F.3d 882, 887 (3d Cir. 1997) ("The utility of uninhibited testimony and the integrity of

the judicial process would be damaged if we were to permit unchecked retaliation for

appearance and truthful testimony at such proceedings.").  As the Fifth Circuit explained,

"[t]he goal of grand jury proceedings, of criminal trials, and of civil trials is to resolve a

dispute by gathering the facts and arriving at the truth, a goal sufficiently important to

render testimony given in these contexts speech of public concern."  Johnston v. Harris

Cty. Flood Control Dist., 869 F.2d 1565, 1578 (5th Cir. 1989) (quotation omitted).  And

the majority cannot seriously dispute that the threat of employer retaliation undermines a

witness' willingness to testify, strengthening the presumption that we treat such speech as

raising a matter of public concern.[1]

       The majority does not cite a single case from this circuit in which sworn testimony

in judicial proceedings is so personal in nature as to overwhelm the strong presumption,

created by both the form and context of the speech, towards treating such speech as

involving matters of public concern.  See Bailey, 896 F.3d at 1181-82 (holding character

letters submitted in a sentencing proceeding implicated public concerns); Deutsch v.

Jordan, 618 F.3d 1093, 1100 (10th Cir. 2010) (holding testimony responding to a charge

of public corruption was a matter of public concern); Worrell v. Henry, 219 F.3d 1197,

1206 (10th Cir. 2000) (holding testimony of an investigator in a criminal trial as a paid

---

[1] The majority states that courts may "protect the integrity of their truth-seeking function" in other ways, "including subpoena and contempt powers, cross-examination, and criminal sanctions for perjury." (Majority Op. 16.)  But Butler in this case testified under the threat of a later subpoena.  And the threat of criminal sanctions for perjury, like hypothetical cross-examination, would not encourage reluctant witnesses threatened with the loss of their livelihood to testify.

expert raised a matter of public concern).  Nor does it identify any Supreme Court cases

so holding.  See Lane, 573 U.S. at 241 (holding testimony in criminal proceedings

regarding public corruption raised a matter of public concern).

## II

To conclude that Butler's speech as a character witness in a child custody

proceeding—an issue that plainly implicates the social fabric of a community—is so

personal or private in content that the speech does not raise a matter of public concern

requires a leap I am unwilling to make.  Butler's speech implicated a child's welfare, and

I repeat, a child's welfare is a matter of interest to the community.  Colorado has

unequivocally declared the placement of children a matter of public concern:  "The

general assembly hereby finds and declares that the stability and preservation of the

families of this state and the safety and protection of children are matters of statewide

concern."  Colo. Rev. Stat. § 19-3-100.5(1).

Unlike purely private matters that may generally be settled at will by the parties,

Colorado has directed courts to make an independent examination of the best interests of

the child in custody matters.  Compare Colo. Rev. Stat. § 14-10-112(2) (permitting

enforcement of conscionable separation agreements, but excepting "the allocation of

parental responsibilities"), with Colo. Rev. Stat. § 14-10-124(1.5) (requiring courts to

"determine the allocation of parental responsibilities . . . in accordance with the best

interests of the child giving paramount consideration to the child's safety and the

physical, mental, and emotional conditions and needs").  Colorado courts have thus held

that the state has a "public interest" in "determining what is in the best interest of the

parties and their children in a dissolution of marriage action."  In re Marriage of Finer,

893 P.2d 1381, 1388 (Colo. App. 1995).  Similarly, they have explained that child

support determinations "are not purely private determinations, but serve a public

function."  Stillman v. State, 87 P.3d 200, 201 (Colo. App. 2003).

The Colorado Supreme Court has also recognized the doctrine of parens patriae, in

which the state asserts an interest in the protection of children who cannot care for

themselves.  E.P. v. Dist. Court, 696 P.2d 254, 258 (Colo. 1985) ("The state as parens

patriae has a continuing responsibility to provide for the protection of children within its

borders."); see also Gomes v. Wood, 451 F.3d 1122, 1128 (10th Cir. 2006) ("States have

a parens patriae interest in preserving and promoting children's welfare.").  In light of

these explicitly declared public interests, child custody proceedings cannot be treated as

wholly private affairs.

My colleagues fail to appreciate these interests in assessing the facts before us.

Butler's speech may not be so easily dismissed as arising from purely private motivation.

See Bailey, 896 F.3d at 1182 ("Merely because speech concerns an issue of personal

importance does not preclude its treatment as a public matter."); Deutsch, 618 F.3d at

1100 ("[T]he speaker's having a highly personal motive for a disclosure does not

necessarily mean that the speech is not a matter of public concern.").  As in Wright v.

Illinois Dep't of Children & Family Servs., 40 F.3d 1492 (7th Cir. 1994), Butler was not

speaking out of his own interest in obtaining child custody, but rather truthfully testified

to assist the state judiciary in ensuring the welfare of the child whose custody was in

dispute.  Id. at 1505.  Butler's testimony as a character witness directly implicates the very heart of the public concern in determining the appropriate placement for the child.

Further, Butler's allegation that he would have been required to testify pursuant to a subpoena had he not done so willingly refutes the majority's assertion that "Butler's motive for testifying was personal."  (Majority Op. 23.)  As the Seventh Circuit has recognized, "surely an employee summoned to give sworn testimony in a judicial proceeding has a compelling interest in testifying truthfully and the government employer can have an offsetting interest in preventing her from doing so only in the rarest of cases."  Wright, 40 F.3d at 1505 (emphasis omitted).  The majority also emphasizes Butler's truthful answer on the hours of the Department's operations as constituting the entirety of his testimony.  (Majority Op. 22-23.)  But Butler does not argue that the fact that his testimony included the Department's hours of operation rendered the content of his speech public; instead he claims that the content of his testimony as a character witness in the child custody dispute is what makes his testimony public in nature.  Given the authorities cited above, that proposition should be uncontroversial.[2]

---

[2] Even though this matter is before us on a 12(b)(6) dismissal, the Department attempts to introduce its motive for demoting Butler by reference to its written reprimand. That letter tells us Butler was demoted for causing departmental disharmony because another employee of the department was a party to the child custody proceedings at issue. Even if we are to consider this extraneous claim, an employer's motive is not relevant to our public concern analysis, as my colleagues recognize.  (Majority Op. 4 n.2.)  Instead, the employer's motive may be relevant in deciding whether the employer's interest in maintaining workplace harmony is stronger than the speaker's interest in exercising their First Amendment rights.  See Bailey, 896 F.3d at 1181 (summarizing the third prong in Garcetti/Pickering as "whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech

### III

Finally, I would also hold that Butler's constitutional right to testify in child custody judicial proceedings without incurring employer retaliation was clearly established.  Generally, "[f]or a right to be clearly established there must be Tenth Circuit or Supreme Court precedent close enough on point."  Mascorro v. Billings, 656 F.3d 1198, 1208 (10th Cir. 2011).  But "in an obvious case" more general "standards can clearly establish the answer, even without a body of relevant case law."  Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (quotations omitted); see also White v. Pauly, 137 S. Ct. 548, 552 (2017) (reaffirming the "obvious case" rule).  In the vernacular, if the constitutional violation is plain, it is unnecessary to resort to such granular detail as to require another case involving a "purple cow."[3]

Butler's claims present such an obvious case.  Accordingly, the general standards articulated by the Supreme Court in Lane clearly establish Butler's First Amendment right to testify in a judicial proceeding free from employer retaliation.  In Lane, the Court expressly held that speech proffered as testimony in a judicial proceeding "fortif[ies]" the conclusion that such speech raises a matter of public concern.  573 U.S. at 241.  This Supreme Court pronouncement clearly establishes a strong presumption that truthful

---

interests").  The majority did not reach this prong of the Garcetti/Pickering test, although I do not consider that thin motive to overwhelm the speaker's constitutional interest.

[3] Courts in different jurisdictions have adopted various animal analogies to describe a case with nearly identical facts, including red cow, spotted dog, spotted horse, and white pony.  See Corn v. City of Lauderdale Lakes, 997 F.2d 1369, 1390 n.2 (11th Cir. 1993).

testimony is not a purely private matter.  And in light of Colorado's explicit statements of

policy that child custody presents a matter of public concern, <u>see</u> Part II, <u>supra</u>, it should

be clear to any reasonable official that testimony in child custody proceedings does not

overcome that presumption.