FILED
United States Court of Appeals
Tenth Circuit

June 4, 2019

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

JERUD BUTLER,

    Plaintiff - Appellant,

v.

BOARD OF COUNTY
COMMISSIONERS for San Miguel
County, et al.,

    Defendants - Appellees.

No. 18-1012

_____

**ORDER**
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, **LUCERO**, **HARTZ**, **HOLMES**, **MATHESON**, **BACHARACH**, **PHILLIPS**, **McHUGH**, **MORITZ**, **EID**, and **CARSON**, Circuit Judges.
_____

This matter is before the court on the appellant's *Petition for Rehearing En Banc*. We also have a response from the appellees.

The petition and response were circulated to all judges of the court who are in regular active service. A poll was called, and a majority of the judges voted to deny the request for en banc review. *See* Fed. R. App. P. 35(a). Consequently, the petition is denied.

Judges Briscoe, Lucero, Phillips and McHugh voted to grant en banc rehearing. Judge Lucero has prepared the attached written dissent from the denial of en banc rehearing, in which Judges Briscoe, Phillips and McHugh join.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

by: Chris Wolpert
    Chief Deputy Clerk

18-1012, Butler v. Board of County Commissioners
LUCERO, Circuit Judge, joined by BRISCOE, PHILLIPS, and McHUGH, Circuit Judges, dissenting from the denial of en banc rehearing.

Were this a routine case in which en banc reconsideration had been denied, that of course would end the matter. But this is not an ordinary case. The proposition that the custody of a child does not ultimately involve a matter of public concern is untenable, particularly so given the statutes and precedents of the state of Colorado, which expressly and dispositively announce the public policy of the state as being directly to the contrary. The further proposition that local governments may sanction employees for testifying on such matters in the public courts and tribunals of this circuit is a dangerous and highly corrosive precedent—the adversary system depends on free and open adjudication in which parties have a right to call witnesses to testify on their behalf and witnesses, be they public or private employees, have the right and duty to testify when called in the open courts of our circuit. The precedent announced by this panel, which allows local governments to interfere with both the rights of litigants and witnesses and in which the local government has no concern, must not be allowed to stand.

There is an existing circuit split on the extent to which the constitution protects sworn testimony in judicial proceedings. To date, the Court has elected to resolve the issue by its 2014 decision in Lane v. Franks, 573 U.S. 228 (2014). That case mandates that "the form and context of the speech—sworn testimony in a judicial proceeding— fortify th[e] conclusion" that such speech involves "matters of significant public concern." Id. at 236-37. Lane protects such speech. The panel acknowledges that holding in Lane, but concludes that the child custody proceedings at issue were not "of

interest or concern to the community at large." Butler v. Bd. of Cty. Comm'rs for San Miguel Cty., 920 F.3d 651, 664 (10th Cir. 2019). In other words, the panel concludes that the content of Butler's speech in child custody proceedings is so personal in nature as to overwhelm the presumption that such speech raises a matter of public concern.[1] I respectfully, but most assuredly, dissent from the unwillingness of my en banc colleagues to correct this error.

# I

Jerud Butler was demoted for providing truthful testimony in a judicial proceeding weeks after his promotion to the position of District Supervisor for the San Miguel County Road and Bridge Department. On his own time, he testified as a character witness in child custody proceedings involving his sister-in-law and her ex-husband, a fellow employee of the Department. Butler testified in his own capacity during non-

---

[1] Given that the right of free speech under the First Amendment protects all speech, private and public, it follows, in Hohfeldian terms, that the government at issue has no right to interfere with the private speech of its employees. Correlatively, if the speech be analyzed as a liberty interest, the government has a duty to refrain from interfering with the employee's private speech.
    Lane, Garcetti v. Ceballos, 547 U.S. 410 (2006), and Pickering v. Board of Education, 391 U.S. 563 (1968), are cases in which the Court considered government employee speech directly or indirectly relevant to the employer's governmental functions, duties, and responsibilities. Those cases did not involve issues relating to purely private speech spoken in a non-job-related context. The Court's jurisprudence in Lane, Garcetti, and Pickering has mutated over the years. See United States v. Nat'l Treasury Employees Union, 513 U.S. 454, 466 n.10 (1995); Rankin v. McPherson, 483 U.S. 378, 380 (1987). The present case demonstrates and underlines the consequence of any error in the analysis of the public/private dichotomy because if the speech is declared to be private, as the panel majority has done here, that conclusion is being utilized as the rationale and justification for interference with purely private speech.
    The velocity of the present jurisprudential path needs to be corrected.

working hours and off the premises of his employer. Had Butler not testified willingly regarding the character of his sister-in-law, the record tells us that he would have been compelled to testify under subpoena.

At the child custody proceeding, Butler testified truthfully about his sister-in-law's character. Butler also testified truthfully about the working hours of the Department. Following an investigation conducted by his supervisors just weeks after his testimony, Butler was demoted and given a written reprimand for having testified.[2]

## II

"[T]he First Amendment's primary aim is the full protection of speech upon issues of public concern." Connick v. Myers, 461 U.S. 138, 154 (1983). The Supreme Court "has frequently reaffirmed that speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." Id. at 145 (quotation omitted). To determine whether speech rises to a matter of public concern, we assess the "content, form, and context of the speech." Lane, 573 U.S. at 241 (quotation omitted).

Because the form and context of sworn testimony in judicial proceedings weigh so strongly in favor of treating speech as a matter of public concern, we had never previously held such speech to be not "of interest or concern to the community at large." Butler, 920 F.3d at 664. Whenever testimony in a judicial proceeding has come before

---

[2] These facts are taken from the complaint. Because this case is before the court at the motion-to-dismiss stage, the plausible factual allegations of the complaint are accepted as true, and viewed in the light most favorable to Butler. Straub v. BNSF Ry. Co., 909 F.3d 1280, 1287 (10th Cir. 2018).

3

us, we have declared it to raise a matter of public concern.  See Bailey v. Indep. Sch. Dist. No. 69, 896 F.3d 1176, 1181 (10th Cir. 2018) (character testimony in a sentencing proceeding implicates public concerns); Deutsch v. Jordan, 618 F.3d 1093 (10th Cir. 2010) (testimony responding to a charge of public corruption is a matter of public concern); Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000) (testimony of an investigator in a criminal trial as a paid expert raises a matter of public concern).  So, too, has the Supreme Court.  See Lane, 573 U.S. at 236-37 (testimony in criminal proceedings regarding public corruption raises a matter of public concern).  Our sibling circuits, the Third and the Fifth, have adopted an absolute rule that the First Amendment protects all testimony in judicial proceedings as raising a matter of public concern.  See Green v. Philadelphia Hous. Auth., 105 F.3d 882, 887 (3d Cir. 1997); Johnston v. Harris Cty. Flood Control Dist., 869 F.2d 1565, 1578 (5th Cir. 1989).

Even those circuits that reject the per se rule recognize the powerful presumption towards treating sworn testimony in a judicial proceeding as raising a matter of public concern.  See Catletti ex rel. estate of Catletti v. Rampe, 334 F.3d 225, 230 (2d Cir. 2003) ("The paramount importance of judicial truth-seeking means that truthful trial testimony is almost always of public concern." (emphasis added)); Wright v. Illinois Dep't of Children & Family Servs., 40 F.3d 1492 (7th Cir. 1994) (rejecting a per se rule, but explaining "surely an employee summoned to give sworn testimony in a judicial proceeding has a compelling interest in testifying truthfully and the government employer can have an offsetting interest in preventing her from doing so only in the rarest of cases" (emphasis omitted)).  The panel opinion places our circuit at odds with this vast body of

4

caselaw, granting neither absolute protection nor even the presumption of protection for sworn and truthful testimony in judicial proceedings.

Whether in the form of an absolute rule or a strong presumption, the preference for treating testimony in judicial proceedings as raising a matter of public concern is well-founded. As the Supreme Court explained in Lane, "[u]nlike speech in other contexts, testimony under oath has the formality and gravity necessary to remind the witness that his or her statements will be the basis for official governmental action, action that often affects the rights and liberties of others." 573 U.S. at 236-37. The integrity of our judicial process depends upon the willingness of witnesses to provide truthful testimony. Green, 105 F.3d at 887 ("The utility of uninhibited testimony and the integrity of the judicial process would be damaged if we were to permit unchecked retaliation for appearance and truthful testimony at such proceedings."); Johnston, 869 F.2d at 1578 (goal of judicial proceedings "is to resolve a dispute by gathering the fact and arriving at the truth, a goal sufficiently important to render testimony given in these contexts speech of public concern" and allowing employers to retaliate "would chill the employees' willingness to testify freely and truthfully and would obstruct the [court's] path to the truth").

The precedent established in this case undermines the ability of the judicial system to arrive at the truth by forcing public employees to choose between their economic wellbeing and the obligation to testify truthfully in, when called, judicial proceedings. Johnston, 869 F.2d at 1578 ("Those able to risk job security would suffer state-sponsored retaliation for speaking the truth before a body entrusted with the task of discovering the

truth. Those unwilling or unable to risk unemployment would scuttle our efforts to arrive at the truth.").

Moreover, the threat of employer retaliation obliterates not only the judiciary's ability to uncover the truth, but also the constitutionally enshrined procedural protections intended to aid that truth-seeking process. Catletti, 334 F.3d at 230 ("[T]he foundations of federal justice will be undermined if witnesses are not able to testify freely." (quotation omitted)). As a consequence, by allowing employer retaliation, the panel undermines civic order because "the act of offering truthful testimony is the responsibility of every citizen, and the First Amendment protection associated with fulfilling that duty of citizenship is not vitiated by one's status as a public employee." Reilly v. City of Atl. City, 532 F.3d 216, 231 (3d Cir. 2008).

It is particularly troubling that the panel chooses child custody testimony to jettison the strong presumption towards treating speech in a judicial proceeding as a matter of public concern. Colorado courts have expressly declared the state has a "public interest" in "determining what is in the best interest of the parties and their children." In re Marriage of Finer, 893 P.2d 1381, 1388 (Colo. App. 1995). The welfare of children in custody disputes plainly implicates the social fabric of a community, and should be treated as a matter of public concern. See Bailey, 896 F.3d at 1181 ("Matters of public concern are issues of interest to the community, whether for social, political, or other reasons." (quotation omitted)).

Similarly, the Colorado legislature has unequivocally established that the placement of children is a matter of public concern: "The general assembly hereby finds

6

and declares that the stability and preservation of the families of this state and the safety and protection of children are matters of statewide concern." Colo. Rev. Stat. § 19-3-100.5(1). And unlike in private disputes where parties may settle at will, the Colorado legislature directs courts in child custody proceedings to conduct independent examinations of the child's best interests. Compare Colo. Rev. Stat. § 14-10-112(2) (permitting enforcement of conscionable separation agreements, but excepting "the allocation of parental responsibilities"), with Colo. Rev. Stat. § 14-10-124(1.5) (requiring courts to "determine the allocation of parental responsibilities . . . in accordance with the best interests of the child giving paramount consideration to the child's safety and the physical, mental, and emotional conditions and needs").[3]

Despite Colorado's numerous express statements to the contrary, the panel nonetheless concludes the strong presumption towards treating testimony in a judicial proceeding as a matter of public concern is overcome in the context of character testimony in a child custody proceeding. The holding in this case renders hollow not only the First Amendment's protections for well over one hundred thousand public employees in our circuit, but also the right to call and confront witnesses and

---

[3] The panel argues the content of Butler's testimony did not raise a matter of public concern even if the underlying child custody proceeding presents such a public concern. I disagree that testimony on the suitability of a potential guardian presented by a character witness does not constitute speech on a public concern in light of Colorado's express statements to the contrary regarding the placement of children in custody proceedings. But even accepting the argument of the panel at face value places us at odds with other circuits. See Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 927 (9th Cir. 2004) ("So long as either the public employee's testimony or the underlying lawsuit meets the public concern test, the employee may, in accord with Connick, be afforded constitutional protection against any retaliation that results." (emphasis added)).

7

fundamental principles of due process. These constitutional protections are the bedrock upon which the sanctity of the judiciary rests.

        For the foregoing reasons, I respectfully dissent from the denial of en banc review.